1   James Bopp, Jr. (Ind. State Bar No. 2838-84)
    Barry A. Bostrom (Ind. State Bar No.11912-84)
2   Sarah E. Troupis (Wis. State Bar No. 1061515)
    Scott F. Bieniek (Ill. State Bar No. 6295901)
3   BOPP, COLESON & BOSTROM
    1 South Sixth Street
4   Terre Haute, IN 47807-3510
    Telephone:   (812) 232-2434
5   Facsimile:    (812) 235-3685
    Counsel for All Plaintiffs
6

7   Timothy D. Chandler (Cal. State Bar No. 234325)*
    ALLIANCE DEFENSE FUND
8   101 Parkshore Drive, Suite 100
    Folsom, CA 95630
9   Telephone:   (916) 932-2850
    Facsimile:    (916) 932-2851
10   Counsel for All Plaintiffs

11   *Designated Counsel for Service

12

                **United States District Court**
13            **Eastern District of California**
                  **Sacramento Division**

| | |
|---|---|
| **ProtectMarriage.com - Yes on 8, a Project of California Renewal; National Organization for Marriage California - Yes on 8, Sponsored by National Organization for Marriage, John Doe #1**, an individual, and as a representative of the **Class of Major Donors**, <br> *Plaintiffs,* <br><br> *v.* <br><br> **Debra Bowen,** Secretary of State for the State of California, in her official capacity; **Edmund G. Brown, Jr.,** Attorney General for the State of California, in his official capacity; **Dean C. Logan,** Registrar-Recorder of Los Angeles County, California, in his official capacity; **Department of Elections - City and County of San Francisco**; **Jan Scully,** District Attorney for Sacramento County, California, in her official capacity and as a representative of the Class of District Attorneys in the State of California; **Dennis J. Herrera**, City Attorney for the City and County of San Francisco, California, in his official capacity and as a representative of the Class of Elected City Attorneys in the State of California; **Ross Johnson, Timothy Hodson, Eugene Huguenin, Jr., Robert Leidigh,** and **Ray Remy**, members of the California Fair Political Practices Commission, in their official capacities, <br> *Defendants*. | Case No. 2:09-CV-00058-MCE-DAD <br><br> **Second Amended Complaint** <br><br> Judge Morrison C. England, Jr. |

Second Amended Complaint           1

ProtectMarriage.com - Yes on 8, a Project of California Renewal ("ProtectMarriage.com"), National Organization for Marriage California - Yes on 8, Sponsored by National Organization for Marriage ("NOM-California"), and John Doe #1, an individual, and as a representative of the Class of Major Donors, complain as follows:

**Introduction**

1. This is a pre-enforcement, facial and as-applied constitutional challenge to California's Political Reform Act of 1974, California Government Code ("CGC") § 81000 *et seq.*, as amended ("the Act"). Plaintiffs, ProtectMarriage.com, NOM-California, and the Class of Major Donors, seek declaratory and injunctive relief with respect to portions of the Act because they violate the First Amendment to the United States Constitution, as incorporated to the states by virtue of the Fourteenth Amendment to the United States Constitution. Consequently, each is unconstitutional on its face and as applied to Plaintiffs ProtectMarriage.com, NOM-California, the Class of Major Donors, and all other similarly situated persons.

2. Specifically, Plaintiffs ProtectMarriage.com, NOM-California, and the Class of Major Donors challenge all of the Act's compelled disclosure requirements as-applied to them and all similarly situated persons on the ground that there is a reasonable probability that the Act's compelled disclosure requirements will result in threats, harassment, and reprisals, similar to those already suffered by supporters of Proposition 8.

3. Furthermore, Plaintiffs ProtectMarriage.com and NOM-California challenge the Act's threshold for reporting contributors, CGC § 84211, both facially and as-applied to them, on the grounds that the extremely low limit is not narrowly tailored to serve a compelling government interest, in violation of the First Amendment to the United States Constitution, as incorporated to the State of California by the Fourteenth Amendment.

4. Finally, Plaintiffs, ProtectMarriage.com, NOM-California, and the Class of Major Donors, challenge the Act's compelled disclosure requirements, both facially and as-applied, to the extent that the Act requires Plaintiffs to file reports *after* the election and to the extent that California continues to make said reports available to the public after the election, because post-

**Second Amended Complaint** 2

election reporting with respect to ballot measures is not narrowly tailored to serve a compelling government interest in violation of the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment.

## I.

### Jurisdiction and Venue

**5.**     This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

**6.**     This court has subject matter jurisdiction to adjudicate all claims in this complaint by reason of 28 U.S.C. §§ 1331 and 1343(a).

**7.**     The Eastern District of California is the proper venue for this case under 28 U.S.C. § 1391(b) because Defendants Bowen, Brown, and Scully perform their official duties in the Eastern District of California, Committe Plaintiffs have their principal place of business in California, and John Doe #1, and a majority of the members of the Class of Major Donors reside in California.

## II.

### Parties

**8.**     Plaintiff ProtectMarriage.com is a primarily formed ballot committee under California law.  CGC §§ 82013 and 82047.5.  Plaintiff ProtectMarriage.com's principal place of business is in Sacramento, California.  Plaintiff ProtectMarriage.com's primary purpose is to support Proposition 8, and to that end, it raised and spent over $20 million.

**9.**     Plaintiff NOM-California is a primarily formed ballot committee under California law.  CGC §§ 82013 and 82047.5.  Plaintiff NOM-California's principal place of business is Santa Ana, California.  Plaintiff NOM-California's primary purpose is to support Proposition 8, and to that end, it raised and spent nearly $2 million.

**10.**     Together, Plaintiffs **ProtectMarriage.com** and **NOM-California** are collectively referred to as "**Committee Plaintiffs**."

**11.**     Plaintiff John Doe #1, an individual, and as a representative of the Class of Major Donors, contributed more than $10,000 to a committee in support of Proposition 8 (the "**Class of**

**Second Amended Complaint**                3

1 **Major Donors**" or "**Major Donors**").  John Doe #1 is a resident of Ventura County, California.

2 Pursuant to CGC § 82013, Major Donors are committees under the Act.

3      **12.**     Together, Plaintiffs **ProtectMarriage.com**, **NOM-California**, and the **Class of**

4 **Major Donors** are simply referred to as "**Plaintiffs**."

5      **13.**     Defendant Debra Bowen is the Secretary of State of California.  She is sued in her

6 official capacity.  Pursuant to CGC § 84215, ProtectMarriage.com and NOM-California are

7 required to file all campaign reports with Defendant Bowen.  All reports filed by Plaintiffs are

8 public records and are open to the public for inspection pursuant to CGC § 81008. Furthermore,

9 the Secretary of State is charged with developing a system for electronic filing of campaign

10 statements, and with making said system available to the public via the World Wide Web.  CGC

11 § 84602.  *See* http://cal-access.sos.ca.gov/campaign/ ("Cal-Access").

12      **14.**     Defendant Edmund Brown, Jr. is the Attorney General of California.  He is sued

13 in his official capacity.  Pursuant to CGC § 91001, Defendant Brown may bring criminal and

14 civil actions against individuals or organizations that fail to comply with the provisions of the

15 Act at issue herein.

16      **15.**     Defendant Dean C. Logan is the Registrar-Recorder of Los Angeles County,

17 California.  He is sued in his official capacity.  Defendant Logan is one of the State officials with

18 whom the Plaintiffs are required to file copies of all reports.  CGC § 84215.  All reports filed by

19 Plaintiffs are public records and are open to the public for inspection at the office of Defendant

20 Logan pursuant to CGC § 81008.

21      **16.**     Defendant Department of Elections - City and County of San Francisco is one of

22 the governmental offices with whom the Plaintiffs are required to file copies of all reports.  CGC

23 § 84215.  All reports filed by Plaintiffs are public records and are open to the public for

24 inspection at the office of Defendant Department of Elections - City and County of San

25 Francisco pursuant to CGC § 81008.

26      **17.**     Defendant Jan Scully is the District Attorney for Sacramento County, California,

27 the county in which Plaintiff ProtectMarriage.com has its principal offices.  She is sued in her

28 official capacity and as a representative of the class of District Attorneys in the State of

California.  Pursuant to CGC § 91001, Defendant Scully and all other District Attorneys in the State of California may bring criminal and civil actions against individuals or organizations that fail to comply with the provisions of the Act at issue herein.

18.     Defendant Dennis J. Herrera is the City Attorney for the City and County of San Francisco, California.  He is sued in his official capacity and as a representative of the class of Elected City Attorneys in the State of California.  Pursuant to CGC § 91001.5, Defendant Herrera and all other Elected City Attorneys may bring criminal and civil actions against individuals or organizations that fail to comply with the provisions of the Act at issue herein.

19.     Defendant Ross Johnson is the Chairman of the Fair Political Practices Commission ("FPPC").  He is sued in his official capacity and is subject to the jurisdiction of this court. Defendants Timothy Hodson, Eugene Huguenin, Jr., Robert Leidigh, and Ray Remy are members of the FPPC.  They are sued in their official capacity.  The FPPC has the "primary responsibility for the impartial, effective administration and implementation of [the Act]."  CGC § 83111.  The FPPC has the authority to investigate possible violations of the Act based upon sworn complaints of any person or upon its own initiative.  CGC § 83115.  Pursuant to CGC § 83116, the FPPC has the authority to order Committee Plaintiffs to comply with the provisions of the Act and to impose civil fines up to five thousand dollars.  Under CGC § 91001, the FPPC may bring any civil action that could be brought by a voter or resident of the jurisdiction. Finally, under CGC § 91005.5, the FPPC may bring a civil action for violations of the provisions at issue herein in which a civil penalty of up to $5,000 per violation may be imposed.

### III.

### Class Action Allegations[1]

20.     In paragraph eleven (11), Plaintiff John Doe #1 is named as a representative of the **Class of Major Donors**, persons that have contributed $10,000 or more to Committee Plaintiffs

---

[1]Plaintiffs will file a separate motion for class certification under Rule 23 but wanted to notify the Court and opposing counsel of their intent to do so at this early stage of the litigation.

**Second Amended Complaint**              5

or similar organizations.[2]  This class action may be maintained under Federal Rule of Civil

Procedure ("FRCP") 23(a) because: the class of all individuals that have contributed $10,000 or

more to Committee Plaintiffs are so numerous – three hundred eighty-two (382) such persons

contributed to Plaintiff ProtectMarriage.com and twenty-seven (27) such individuals contributed

to Plaintiff NOM-California – that joinder of all members is impracticable; the questions of law

and fact are common to the members of the class, to wit, whether the Act's registration and

reporting requirements are unconstitutional as-applied to individuals that have been subjected to

threats, harassment, and reprisals as an inevitable consequence of California's compelled

disclosure laws, whether said individuals may be required to file reports *after* the election for the

ballot measure has occurred, and whether the state may continue to make reports available to the

public *after* the election for the ballot measure has occurred; John Doe #1's claims are typical of

the claim of all members of the class; and John Doe #1, as the class representative, will fairly

and adequately protect the interests of the class because all members of the class share the same

interests in this matter, to wit, obtaining an exemption from the Act's registration and reporting

requirements and having all previously filed reports expunged.  This class action may be

maintained under FRCP 23(b)(1) because the prosecution of separate actions by all members of

the class would establish incompatible standards of conduct for the Plaintiffs and Defendants, or

it would create a risk of adjudications with respect to individual members of the class which

would as a practical matter be dispositive of the interests of the other members not parties to the

adjudications or substantially impair or impede their ability to protect their interests.  These class

actions may be maintained under FRCP 23(b)(2) because the Defendants have acted on grounds

generally applicable to the class, thereby making appropriate final injunctive or corresponding

declaratory relief with respect to the class as a whole.  Finally, these class actions may be

maintained under FRCP 23(b)(3) because there are questions of law and fact common to the

---

[2] Pursuant to CGC § 82013, the term "committee" includes any person who "makes contributions totaling ten thousand dollars ($10,000) or more in a calendar year to or at the behest of candidates or committees."  Like PFCs, these persons have registration and reporting requirements.  *See* CGC § 84200(b).

**Second Amended Complaint**                6

members of the class which predominate over any questions affecting only individual members; and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, to wit, separate actions by each and every person that contributed $10,000 or more to Committee Plaintiffs.

21.     In paragraphs seventeen (17) and eighteen (18), respectively, Defendant Jan Scully is named as a representative of the Class of all the District Attorneys for the State of California, and Defendant Dennis J. Herrera is named as a representative of the Class of Elected City Attorneys for the State of California. These class actions may be maintained under FRCP 23(a) because: the classes of all District and Elected City Attorneys for the State of California are so numerous that joinder of all members is impracticable – there are over fifty-eight (58) district attorneys in California, and there are over ten (10) cities in California that have elected city attorneys; the questions of law and fact are common to the members of the classes, to wit, whether the Act's registration and reporting requirements at issue herein are unconstitutional, both facially and as-applied, under *Buckley*, 424 U.S. 1 (1976), and its progeny; the defenses of the representative parties are typical of the defenses of the classes; and the representative parties will fairly and adequately protect the interests of the classes because all members of the classes share the same interests in this matter, to wit, defending and enforcing the laws of the State of California. These class actions may be maintained under FRCP 23(b)(1) because the prosecution of separate actions against individual members of the classes would establish incompatible standards of conduct for the Plaintiffs, or it would create a risk of adjudications with respect to individual members of the classes that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. These class actions may be maintained under FRCP 23(b)(2) because the Plaintiffs have acted on grounds generally applicable to the classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the classes as a whole. Finally, these class actions may be maintained under FRCP 23(b)(3) because there are questions of law and fact common to the members of the classes that predominate over any questions affecting only individual members; and a class action is superior to other available

**Second Amended Complaint**                    7

1  methods for the fair and efficient adjudication of this controversy, to wit, separate actions against

2  each and every District and Elected City Attorney in California.

3  **IV.**

4  **Facts**

5  **Brief Overview of Events Leading to Proposition 8**

6  **22.**  The story behind Proposition 8 began in large part on March 7, 2000, when

7  61.4% of California citizens voted in favor of Proposition 22.  Proposition 22, entitled the

8  "California Defense of Marriage Act," added California Family Code section 308.5, which

9  provided that, "Only marriage between a man and a woman is valid or recognized in California."

10  *A History of California Initiatives*, California Secretary of State, *available at*

11  http://www.sos.ca.gov/elections/init_history.pdf (last visited Dec. 10, 2008).

12  **23.**  Nevertheless, on February 10, 2004, contrary to the definition of marriage

13  contained in section 308.5, the Mayor of the City and County of San Francisco directed the San

14  Francisco county clerk to begin issuing marriage licenses to same-sex couples.  *In re Marriage*

15  *Cases*, 43 Cal. 4th 757, 785 (2008).  On March 11, 2004, in response to a challenge regarding the

16  authority of the City and County of San Francisco to issue same-sex marriage licenses in light of

17  section 308.5, the California Supreme Court issued a stay, pending the final resolution of the

18  case, and ordered City officials to refrain from issuing any further licenses.  *Id.* at 785-86.  On

19  August 12, 2004, the California Supreme Court rendered its final decision in the case, ruling that

20  the City and County of San Francisco had exceeded its authority by issuing marriage licenses to

21  same-sex couples in violation of section 308.5 and voided all same-sex marriage licenses issued

22  by the City.  *Id.* at 787.

23  **24.**  While the above challenge was pending, the City and County of San Francisco

24  filed suit, alleging that section 308.5 violated the California Constitution.  *Id.* at 786.  On April

25  13, 2005, the California superior court ruled that section 308.5 violated the Equal Protection

26  Clause of the California Constitution.  *Id.* at 787.  While the superior court's decision was

27  reversed by the California appellate court, that victory was short-lived, because on May 15,

28  2008,

**Second Amended Complaint**          8

the California Supreme Court ruled that section 308.5 of the California Family Code violated the California Constitution. *Id* at 857.

**25.**   Shortly after the California superior court announced its ruling that section 308.5 violated the California Constitution, ProtectMarriage.com announced its intentions to seek an amendment to the California Constitution that would solve the alleged infirmities of section 308.5 of the Family Code. John M. Hubbell, *Coalition Seeks Male-Female Marriage Definition: New Ballot Push for Constitutional Amendment*, San Francisco Chronicle, Apr. 28, 2005, *available at* http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2005/04/28/BAGM6CGHTT1.DTL&type=printable (last visited Dec. 10, 2008). ProtectMarriage.com ultimately failed to obtain the necessary number of signatures to place a constitutional amendment on the June 2006 ballot.

**Proposition 8 – The Campaign and the Aftermath**

**26.**   On June 2, 2008, Debra Bowen, the California Secretary of State, certified Proposition 8, indicating that ProtectMarriage.com had obtained the requisite number of signatures to place the proposed Constitutional Amendment on the November 4, 2008 ballot.

**27.**   Proposition 8, entitled the "California Marriage Protection Act," provides for the addition of section 7.5 to Article I of the California Constitution, which reads in its entirety, "Only marriage between a man and a woman is valid or recognized in California."[3] 2008 California Voter Information Guide, *available at* http://www.voterguide.sos.ca.gov/title-sum/prop8-title-sum.htm (last visited Dec. 12, 2008).

**28.**   Plaintiff ProtectMarriage.com is a "committee" under California law because it received contributions of one thousand dollars ($1,000) or more in support of Proposition 8. CGC § 82013(a).

---

[3] Even the name of Proposition 8 proved controversial. The Secretary of State changed the official name of Proposition 8 as placed on the ballot to "Eliminates Right of Same-Sex Couples to Marry. Initiative Constitutional Amendment." 2008 California Voter Information Guide, *available at* http://www.voterguide.sos.ca.gov/title-sum/prop8-title-sum.htm (last visited Dec. 12, 2008).

**Second Amended Complaint**                    9

**29.** Plaintiff ProtectMarriage.com is a "primarily formed committee" because it was formed to support one or more statewide ballot measures in the same election. CGC § 82047.5(c).

**30.** Plaintiff NOM-California is a "committee" under California law because it received contributions of one thousand dollars ($1,000) or more in support of Proposition 8. CGC § 82013(a).

**31.** Plaintiff NOM-California is a "primarily formed committee" because it was formed to support one or more statewide ballot measures in the same election. CGC § 82047.5(c).

**32.** Major Donors are committees pursuant to CGC 82013(c) because they contributed ten thousand dollars ($10,000) or more in a calendar year to a PFC.

**33.** As set forth in more detail below, the Act places numerous administrative burdens on committees including, but not limited to, the filing of registration and public disclosure statements. *See* ¶¶ 47 - 62.

**34.** Plaintiffs and other supporters of Proposition 8 have been subjected to threats, harassment, and reprisals as a result of their support for Proposition 8. *See generally*, Decl. of Sarah E. Troupis (consisting of a number of exhibits, mostly news stories, highlighting the animosity directed at supporters of Proposition 8);[4] http://www.californiansagainsthate.com ("Help us identify and take action against those who want to deny us our equal rights;" stating that the purpose of the organization is not to provide a meaningful debate about Proposition 8, but instead, simply to identify those individuals and businesses that supported Proposition 8 so that the organization can "fight back.").

**35.** The threats and harassment have included threatening phone calls, emails, and postcards. *See*, *e.g.*, Decl. of John Doe #1 (received harassing phone calls that referenced his

---

[4] All declarations referenced herein will be filed once the Court rules on Plaintiffs' *Ex Parte Motion for Leave to File Documents Under Seal*. Plaintiffs have used pseudonyms to refer to the individual declarants to protect their identities and to protect them from further harassment.

**Second Amended Complaint** 10

support of Proposition 8); Decl. of John Doe #4 (received multiple threatening emails including one that read "hello propagators & litagators [sic] burn in hell" and another that read "congratulations. for your support of prop 8, you have won our tampon of the year award."); Decl. of John Doe #6 (postcard chastising her for her financial support of Proposition 8). In some instances, such phone calls and e-mails were accompanied by death threats, a threat made all the more plausible by the compelled disclosure of the addresses of the donors. *See, e.g.*, Decl. of Sarah E. Troupis, Ex. E ("Consider yourself lucky. If I had a gun I would have gunned you down along with each and every other supporter. . . . I've also got a little surprise for Pasor [sic] Franklin and his congregation of lowlife's [sic] in the coming future. . . . He will be meeting his maker sooner than expected. . . . If you thought 9/11 was bad, you haven't seen anything yet."); Ex. P (listing the supporter's home and business contact information, including address and stating: "Hi [REDACTED], I just wanted to call and let you know what a great picture that was of you and the other Nazi's [sic] in the newspaper. It's nice to see you getting out and supporting discrimination. Don't worry though, we have plans for you and your friends. When you have one of your basic rights taken away from you, you'lll [sic] know how it feels to be discriminated against. I hope you rot in hell, you fckuing [sic] c**t.").

     **36.**    Supporters of Proposition 8 have also had their personal property vandalized or destroyed. *See, e.g.*, Decl. of John Doe #3 (window broken using "Yes on 8" sign); *see generally* Decl. of Sarah E. Troupis, Ex. Q - AC (containing news reports of widespread vandalism, including graffiti, property damage, and sign theft).

     **37.**    Supporters of Proposition 8 have also received envelopes containing a suspicious white powdery substance. *See* Decl. of Sarah E. Troupis, Ex. J (reporting that two Church of Latter Day Saints temples and a Knights of Colombus facility received envelopes containing a white powdery substance).

     **38.**    The threats and harassment have extended into the work lives of the supporters of Proposition 8. *See, e.g.*, Decl. of John Doe #2 (flyer distributed in his hometown calling him a "Bigot," indicating that he gave $X,XXX in support of Proposition 8, and that he is a Deacon at a Catholic Church); Decl. of John Doe #5 (donor gave one hundred dollars and received email

that read "It will be interesting to see if your firms' [sic] decision to support the 'Yes on Proposition 8' campaign will prove true the axiom - any PR is good PR. I doubt it."); Decl. of John Doe #4 (received email that read "I AM BOYCOTTING YOUR ORGANIZATION AS A RESULT OF YOUR SUPPORT OF PROP 8" and another that read "I will tell all my friends not to use your business. I will not give you my hard earned money knowing that you think I don't deserver [sic] the same rights as you do. This is a consequence of your hatred.").

39.     Businesses, whether or not they have contributed to either side of the Proposition 8 campaign, have been blacklisted because people who worked at those businesses supported Proposition 8. *See generally* Decl. of Sarah E. Troupis, Ex. AD - BE (discussing pattern of blacklisting and boycotting of business that contributed to Proposition 8). *See*, *e.g.*, Decl. of John Doe #1 (numerous protests and his business, and reports of several organized boycotts). Indeed, several individuals have been forced to resign from their positions at work because their support of Proposition 8 was made public through the compelled disclosure system. Decl. of Sarah E. Troupis, Ex. AD (forced to resign over one hundred dollar donation); Ex. AH (forced to resign over $1,500 donation); Ex. AI (forced to resign over $1,000 donation).

40.     Several donors have indicated that they will not contribute to Committee Plaintiffs or similar organizations in the future because of the threats and harassment directed at them as a result of their contributions to Committee Plaintiffs and the public disclosure of that fact. Indeed, there is significant evidence that, because of the disclosure of their names, donations to groups supporting the passage of Proposition 8 led directly to those donors being singled out for threats, harassment, and reprisals. *See*, *e.g.*, Decl. of John Doe #1 (indicating that he would not contribute again if it meant that he, and his employees, would be harassed as a result of his support); Decl. of John Doe #2 (unlikely to contribute in future because a flyer was circulated calling him a "bigot" for supporting Proposition 8 and referencing the amount of his donation); Decl. of John Doe #5 (stating that he feels "threatened and uneasy knowing that [his] company and [he] could be targeted simply for participating in the democratic process" because he received an email referencing the amount of his donation).

**Second Amended Complaint**          12

**41.** The threats and harassment directed at supporters of Proposition 8 have been enabled in part by the Act's compelled disclosure requirements.

**42.** Committee Plaintiffs and Major Donors have filed, or will file, unless appropriate relief is granted, reports in accordance with the various provisions set forth below.

**43.** Committee Plaintiffs believe potential contributors were discouraged from contributing to their committees as a result of the threats and harassment directed at supporters of Proposition 8.

**44.** The continued availability of Plaintiffs' previously filed reports creates the reasonable probability that supporters of Proposition 8 will be subjected to continued harassment for exercising their First Amendment rights.

**45.** Compliance with the Act's post-election reporting requirements creates a reasonable probability that those individuals and organizations that made contributions or received expenditures in support of Proposition 8 will be subject to the same level of threats, harassment, and reprisals as set forth above.

**46.** Plaintiffs have suffered, or will suffer, irreparable harm if the requested relief is not granted.

**The California Campaign Finance System**

**47.** The Act defines a "committee" in relevant part as follows:

> "Committee" means any person or combination of persons who directly or indirectly does any of the following: (a) receives contributions totaling one thousand dollars ($1,000) or more in a calendar year; (b) makes independent expenditures totaling one thousand dollars ($1,000) or more in a calendar year; (c) makes contributions totaling ten thousand dollars ($10,000) or more in a calendar year to or at the behest of candidates or committees . . . .

CGC § 82013.

**48.** A "person" is defined by CGC § 82047 as:

> [A]n individual, proprietorship, firm, partnership, joint venture, syndicate, business, trust, company, corporation, limited liability company, association, committee, and any other organization or group of persons acting in concert.

**49.** A "primarily formed committee" ("PFC") is defined as:

[A] committee pursuant to subdivision (a) of Section 82013 which is formed or exists primarily to support or oppose any of the following: (a) a single candidate; (b) a single measure; (c) a group of specific candidates being voted upon in the same city, county, or multicounty election; two or more measures being voted upon in the same city, county, multicounty, or state election.

CGC § 82047.5.

**50.** The Act imposes numerous record keeping and reporting requirements on PFCs, including, but not limited to: registration statements, campaign statements, the identification of committee sponsors in the committee name, the identification of major donors in advertisements, and termination statements (collectively, the "Reports"). *See* CGC § 84100 *et seq.*

**51.** A PFC is required to file campaign statements at various points throughout the year, including: quarterly, CGC § 84202.3; semi-annually, CGC § 84200; pre-election, CGC § 84200.7; and late contribution, CGC § 84203. Specifically at issue in this case are the semi-annual campaign statements due on January 31, 2009 and all previously filed reports. CGC § 84200.

**52.** Members of the Class of Major Donors are required to file campaign statements pursuant to CGC § 84200(b).

**53.** Plaintiffs are required to file copies of all Reports, including campaign statements, with the Secretary of State, the Registrar-Recorder of Los Angeles County (Defendant Logan), and the Registrar of Voters of the City and County of San Francisco (Defendant Department of Elections - City and County of San Francisco). CGC § 84215.

**54.** Pursuant to CGC § 81009, "[s]tatements of organization, registration statements, and original campaign statements of . . . committees supporting or opposing statewide measures, shall be retained by filing officers *indefinitely*." (emphasis added).

**55.** Furthermore, once a committee has received contributions, made expenditures, made loans, or received loans, of $50,000 or more it must file all Reports electronically with the

Secretary of State. CGC § 84605(a). A committee that files electronically is not required to file paper copies with local filing officers. CGC § 84606.[5]

**56.** All Reports, including campaign statements, are public records and are open to the public for inspection pursuant to CGC § 81008. "No conditions whatsoever shall be imposed upon persons desiring to inspect or reproduce reports and statements filed under this title, nor shall any information or identification be required from these persons." CGC § 81008(a). The literal language of section 81008(a) suggests that the public may access any reports or statements filed pursuant to the Act indefinitely. CGC § 81008(a) ("[T]he filing officer may charge a retrieval fee not to exceed five dollars ($5) per request for copies of reports and statements which are five or more years old."); *see also*, CGC § 81009 (reports retained indefinitely).

**57.** Furthermore, pursuant to CGC § 84602, all Reports, including campaign statements, are published by the Secretary of State on the World Wide Web via Cal-Access. The Act contains no provision as to when such data is to be removed. As of January 7, 2008, Cal-Access contained information regarding ballot measure contributions as far back as the March 7, 2000 election. *See* CGC § 84600 *et seq.* (the "Online Disclosure Act").

**58.** CGC § 84211 provides, in relevant part, that each campaign statement shall include:

> (f) if the cumulative amount of contributions (including loans) received from a person is *one hundred dollars ($100)* or more and a contribution or loan has been received from that person during the period covered by the campaign statement, all of the following: (1) *his or her full name*; (2) *his or her street address*; (3) *his or her occupation*; (4) *the name of his or her employer, or if self-employed, the name of the business*; (5) the date and amount received for each contribution received during the period covered by the campaign statement and if the contribution is a loan, the interest rate for the loan;
>
> . . .

---

[5] The Online Disclosure Act, CGC § 84600 *et seq.*, provides that a committee may omit the street name, street number, and bank account information from electronically filed forms. CGC § 84602(d). A number of private web sites, presumably beginning with the information available on Cal-Access, have created their own lists of Proposition 8 supporters which include the information omitted from Cal-Access, as well as additional contact information. *See* http://www.californiansagainsthate.com/.

**Second Amended Complaint**                15

(k) for each person to whom an expenditure of *one hundred dollars ($100)* or more has been made during the period covered by the campaign statement, all of the following: (1) *his or her full name*; (2) *his or her street address*; (3) the amount of each expenditure; (4) a brief description of the consideration for which each expenditure was made; . . . (6) the information required in paragraphs (1) to (4), inclusive, for each person, if different from the payee, who has provided consideration for an expenditure of five hundred dollars ($500) or more during the period covered by the campaign statement.

(emphasis added).

**59.** Furthermore, a committee is required to keep detailed records of *all* contributors of twenty-five dollars ($25.00) or more, and all recipients of expenditures of twenty-five dollars ($25.00) or more, for a period of four years from the date the campaign statement to which they relate is filed. CGC § 84104; Cal. Code Regs. tit. 2, § 18401.

**60.** Moreover, pursuant to CGC § 84105 and Cal. Code Regs. tit. 2, § 18427.1, a committee which receives contributions of five thousand dollars ($5,000) or more from any person shall inform the contributor, within two weeks of receiving such contributions, that he or she may be required to file campaign reports. Pursuant to Cal. Code Regs. § 18427.1, the notice shall contain the following or substantially similar language:

If your contributions . . . to any state and local candidates or committees total $10,000 or more in a calendar year you are required by the Political Reform Act of 1974 to file campaign statements. For more information, contact your city or county clerk or call the Fair Political Practices Commission at (916) 322-5660.

**61.** Any person who knowingly or willfully violates any of the above provisions is guilty of a misdemeanor. CGC § 91000(a). In addition, "a fine of up to the greater of ten thousand dollars ($10,000) or three times the amount the person failed to report properly or unlawfully contributed, expended, gave or received may be imposed upon conviction for each violation." CGC § 91000(b).

**62.** Finally, any person who violates any of the above provisions for which no specific civil penalty is provided shall be liable in a civil action brought by the commission or the district attorney for an amount of up to five thousand dollars ($5,000). CGC § 91005.5. Additionally, any person who intentionally or negligently violates any of the reporting requirements of the act shall be liable in a civil action brought by the civil prosecutor or by a person residing in the jurisdiction. CGC § 91004.

**Second Amended Complaint** 16

**V.**

**Count 1 – The Act is unconstitutional as-applied to Plaintiffs because Plaintiffs' rights to exercise their First Amendment rights free from threats, harassment, and reprisals outweigh the State's interest in compelled disclosure.**

**63.** Plaintiffs reallege and incorporate by reference all allegations made in all the previous paragraphs.

**64.** "The First Amendment is the pillar of a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open . . . ." *Mont. Right to Life v. Eddlemann*, 999 F. Supp. 1380, 1384 (D. Mont. 1998).

**65.** "In the free society ordained by our Constitution it is not the government, but the people – individually as citizens and candidates and collectively as associations and political committees – who must retain control over the quantity and range of debate on public issues in a political campaign." *Buckley*, 424 at 57. "The First Amendment, in particular, serves significant societal interests." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978).

**66.** In *Buckley*, the Supreme Court held that any significant encroachment on First Amendment rights must survive exacting scrutiny, which requires the government to craft a narrowly tailored law to serve a compelling government interest. *See Buckley*, 424 U.S. at 64.

**67.** The Supreme Court recently reaffirmed that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Davis v. F.E.C.*, 128 S. Ct. 2759, 2774-75 (2008) (*quoting Buckley*, 424 U.S. at 64).

**68.** Nevertheless, the Supreme Court has held that three governmental interests may justify campaign disclosure laws if the regulations are narrowly tailored to serve those interests. *See Buckley*, 424 U.S. at 66-68. First, "disclosure provides the electorate with information as to where the political campaign money comes from and how it is spent by the candidate." *Id.* at 66. (the "Informational Interest"). This information alerts voters to the "interests to which a candidate is most likely to be responsive." *Id.* at 67. Second, disclosure can deter actual corruption and avoid the appearance thereof. *Id.* (the "Corruption Interest"). Lastly, disclosure

**Second Amended Complaint** 17

requirements are an essential "means of gathering the data necessary to detect violations of [contribution limits]." *Id.* at 68. (the "Enforcement Interest").[6]

69.     However, in *Buckley*, the Supreme Court noted that even a statute narrowly tailored to serve these compelling interests may have to yield if the infringement on First Amendment rights is severe. *Id.* at 69.

70.     Thus, if an organization can make "an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members had exposed [those] members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility," the state's interests furthered by disclosure may be outweighed by greater First Amendment concerns. *Id.* at 69-71 (*citing NAACP v. Alabama*, 357 U.S. 449, 462 (1958); internal citations omitted).

71.     In making the requisite factual showing, the organization must be "allowed sufficient flexibility in the proof of injury," and the organization need show only a "reasonable probability" that compelled disclosure will subject contributors to "threats, harassment, or reprisals from *either* Government officials or private parties." *Id.* at 74 (emphasis added).

72.     In *Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87 (1982), the Supreme Court considered such a case and held that the organization had demonstrated a "reasonable probability" that compelled disclosure would subject those identified to "threats, harassment, or reprisals." *Id.* at 88. The organization presented evidence of threatening phone calls, hate mail, the burning of organization literature, destruction of members' property, police harassment, and the firing of shots at an organizational office. *Id.* at 99.

73.     Even if the Class of Major Donors did not join this suit, Committee Plaintiffs may assert the rights of the Major Donors pursuant to *Powers v. Ohio*, 499 U.S. 400, 411-16 (1991) (discussing the doctrine of third-party standing). "If petitioner's rank-and-file members are

---

[6] The Corruption Interest is inapplicable in the context of ballot measure elections. *Bellotti*, 435 U.S. at 790. The Enforcement Interest is also inapplicable to ballot measures. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105, n. 23 (9th Cir. 2003) ("*CPLC I*").

constitutionally entitled to withhold their connection with the Association . . . it is manifest that this right is properly assertable by the Association. To require that it be claimed by the members themselves would result in nullification of the right at the very moment of its assertion." *NAACP v. Alabama*, 357 U.S. at 459.

**74.** Committee Plaintiffs are required to file a semi-annual report on or before January 31, 2009. CGC § 84200.

**75.** Major Donors that exceeded the ten thousand dollar ($10,000) reporting threshold after June 30, 2008, must also file a campaign statement on or before January 31, 2009. CGC §84200(b).

**76.** Furthermore, Committee Plaintiffs and some Major Donors have already filed reports in compliance with the Act.

**77.** The January 31st report will include donors that have not been previously disclosed in any of Committee Plaintiffs' prior Reports – namely, those donors who have given in excess of one hundred dollars ($100) but less than one thousand dollars ($1,000) and that have not been disclosed on prior Reports. The January 31st report will be made available to the public and on Cal-Access. CGC §§ 81008 and 84602.

**78.** The January 31st report will also be the first and only report filed by Major Donors who gave after June 30, 2008. CGC § 84200. The January 31st report will be made available to the public and on Cal-Access. CGC §§ 81008 and 84602.

**79.** The threats, harassment, and reprisals directed at Committee Plaintiffs and their contributors, including the Class of Major Donors, are an inevitable result of the Act's disclosure requirements, which are facilitated by the level of personal information required to be included in the campaign statements. For example, the Act requires all PFC's to file a "statement of organization," which includes not only the name, address, and phone number of the organization, but also the name, address, and phone number of the treasurer and other principal officers of the committee. CGC §§ 82013, 84100, 84101 and 84102(c). Similar reporting requirements apply to: contributors (name, address, occupation, and employer), CGC § 84211; expenditures (name and address of recipient), CGC § 84211; sponsors (name, address and telephone number, and

inclusion of sponsor's name in the name of the committee), CGC §§ 82048, 84102(a) and 84102(b); and Major Donors (identified in advertisements), Cal. Code Regs. tit. 2, § 18450.4.

80.     The allegations set forth above establish a pattern of hostility directed at persons because of their support for Proposition 8.

81.     There is a reasonable probability that the disclosure of the identities of Committee Plaintiffs' contributors and recipients of expenditures, including the Class of Major Donors not yet disclosed, will subject those persons to the same threats, harassment, and reprisals set forth above.

82.     Furthermore, the continued availability of the Reports already filed creates a reasonable probability that Committee Plaintiffs' contributors and recipients of expenditures, including the class of Major Donors, will be subjected to ongoing and continued threats, harassment, and reprisals.

## Prayer for Relief

83.     WHEREFORE, Plaintiffs request the following relief:

a.     Declare all registration, reporting, and disclaimer requirements unconstitutional as applied to Committee Plaintiffs, Major Donors, and all other individuals and organizations holding similar views;

b.     Enjoin Defendants from enforcing all registration, reporting, and disclaimer requirements against Committee Plaintiffs, Major Donors, and all other individuals and organizations holding similar views;

c.     Expunge all records of Reports filed by Committee Plaintiffs, Major Donors, and all of their contents, together with all records of Committee Plaintiffs, Major Donors, and all other individuals and organizations holding similar views on California's campaign and reporting disclosure system;

d.     Grant Plaintiffs ProtectMarriage.com, NOM-California, and the Class of Major Donors their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority, and;

**Second Amended Complaint**                    20

**e.**     Any and all other such relief as may be just and equitable.

## VI.

**Count 2 – The Act's requirement that committees report all contributors of $100 or more is unconstitutionally overbroad in violation of the First Amendment because it is not narrowly tailored to serve a compelling government interest.**

**84.**     Committee Plaintiffs reallege and incorporate by reference all allegations made in all the previous paragraphs.

**85.**     "The First Amendment is the pillar of a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open . . . ." *Mont. Right to Life*, 999 F. Supp. at 1384.

**86.**     "In the free society ordained by our Constitution it is not the government, but the people – individually as citizens and candidates and collectively as associations and political committees – who must retain control over the quantity and range of debate on public issues in a political campaign." *Buckley*, 424 U.S. at 57. "The First Amendment, in particular, serves significant societal interests." *Bellotti*, 435 U.S. at 776.

**87.**     In *Buckley*, the Supreme Court held that any significant encroachment on First Amendment rights must survive exacting scrutiny, which requires the government to craft a narrowly tailored law to serve a compelling government interest. *See Buckley*, 424 U.S. at 64.

**88.**     The Supreme Court recently reaffirmed that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Davis*, 128 S. Ct. at 2774-75 (*quoting Buckley*, 424 U.S. at 64).

**89.**     Nevertheless, the Supreme Court has held that three governmental interests may justify campaign disclosure laws if the regulations are narrowly tailored to serve those interests. *See Buckley*, 424 U.S. at 66-68. First, "disclosure provides the electorate with information as to where the political campaign money comes from and how it is spent by the candidate." *Id.* at 66. (the "Informational Interest"). This information alerts voters to the "interests to which a candidate is most likely to be responsive." *Id.* at 67. Second, disclosure can deter actual corruption and avoid the appearance thereof. *Id.* (the "Corruption Interest"). Lastly, disclosure

requirements are an essential "means of gathering the data necessary to detect violations of [contribution limits]." *Id.* at 68. (the "Enforcement Interest").

**90.** However, *Buckley* involved candidate elections, and the Supreme Court has since clarified that the Corruption Interest is simply not present in the context of ballot measure elections. *Bellotti*, 435 U.S. at 790 ("The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue."). The Ninth Circuit has also held that the Enforcement Interest is not applicable in the context of ballot measure elections because the Supreme Court has invalidated contribution limits with respect to ballot measures. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105, n. 23 ("*CPLC I*") ("The interest in collecting data to detect violations also does not apply since there is no cap on ballot-measure contributions . . . .").

**91.** Moreover, the *Buckley* court held that "contributors of relatively small amounts are likely to be especially sensitive to recording or disclosure of their political preferences." *Buckley*, 424 U.S. at 83.

**92.** "[S]trict [reporting] requirements may well discourage participation by some citizens in the political process, a result that Congress hardly could have intended." *Id.*

**93.** Furthermore, the Supreme Court has said that limits, such as the one hundred dollar ($100) reporting threshold at issue in this case, which are not indexed for inflation "will almost inevitably become too low over time." *Randall v. Sorrell*, 548 U.S. 230, 261 (2006) (regarding contribution limits not indexed for inflation).

**94.** To the extent that the State of California has an interest in providing the general public with information as to who is supporting or opposing a particular ballot measure, that interest is adequately served by more narrowly tailored provisions of the Act.

**95.** Thus, CGC § 84211, and Cal. Code Regs. tit. 2, § 18110, are unconstitutionally overbroad in violation of the First Amendment because they are not narrowly tailored to serve a compelling government interest in that they require committees to report the full name and street address for all persons who have contributed a cumulative amount of one hundred dollars ($100) or more to the committee.

**Second Amended Complaint** 22

## PRAYER FOR RELIEF

**96.** WHEREFORE, Committee Plaintiffs request the following relief:

    **a.** Declare CGC § 84211 and Cal. Code Regs. tit. 2, § 18110 unconstitutional both facially and as-applied to Committee Plaintiffs and all other similar individuals and organizations;

    **b.** Enjoin Defendants from enforcing the registration, reporting, and disclaimer requirements against Committee Plaintiffs, and all other similar individuals and organizations;

    **c.** Expunge all records of Reports filed by the Committee Plaintiffs and all of their contents, together with all records of the Committee Plaintiffs on California's campaign and reporting disclosure system;

    **d.** Grant the Committee Plaintiffs their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority, and;

    **e.** Any and all other such relief as may be just and equitable.

### VII.

**Count 3 – The Act's requirement that committees file any reports after the election on a ballot measure is unconstitutional under the First Amendment, both facially and as-applied, because it is not narrowly tailored to serve a compelling government interest.**

**97.** Plaintiffs reallege and incorporate by reference all allegations made in all the previous paragraphs.

**98.** "The First Amendment is the pillar of a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open . . . ." *Mont. Right to Life*, 999 F. Supp. at 1384.

**99.** "In the free society ordained by our Constitution it is not the government, but the people – individually as citizens and candidates and collectively as associations and political committees – who must retain control over the quantity and range of debate on public issues in a political campaign." *Buckley*, 424 U.S. at 57. "The First Amendment, in particular, serves significant societal interests." *Bellotti*, 435 U.S. at 776.

**100.** In *Buckley*, the Supreme Court held that any significant encroachment on First Amendment rights must survive exacting scrutiny, which requires the government to craft a narrowly tailored law to serve a compelling government interest. *See Buckley*, 424 U.S. at 64.

**101.** The Supreme Court recently reaffirmed that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Davis*, 128 S. Ct. at 2774-75 (*quoting Buckley*, 424 U.S. at 64).

**102.** Nevertheless, the Supreme Court has held that three governmental interests may justify campaign disclosure laws if the regulations are narrowly tailored to serve those interests. *See Buckley*, 424 U.S. at 66-68. First, "disclosure provides the electorate with information as to where the political campaign money comes from and how it is spent by the candidate." *Id.* at 66. (the "Informational Interest"). This information alerts voters to the "interests to which a candidate is most likely to be responsive." *Id.* at 67. Second, disclosure can deter actual corruption and avoid the appearance thereof. *Id.* (the "Corruption Interest"). Lastly, disclosure requirements are an essential "means of gathering the data necessary to detect violations of [contribution limits]." *Id.* at 68. (the "Enforcement Interest").

**103.** However, *Buckley* involved candidate elections, and the Supreme Court has since clarified that the Corruption Interest is simply not present in the context of ballot measure elections. *Bellotti*, 435 U.S. at 790 ("The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue."). The Ninth Circuit has also held that the Enforcement Interest is not applicable in the context of ballot measure elections because the Supreme Court has invalidated contribution limits with respect to ballot measures. *CPCL I*, 328 F.3d at 1105, n. 23 ("The interest in collecting data to detect violations also does not apply since there is no cap on ballot-measure contributions . . . .").

**104.** Furthermore, the Informational Interest is directed at "helping [citizens] make up their mind [sic] on how to vote on ballot measures." *Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1179 (9th Cir. 2007) ("*CPLC II*").

**105.** To the extent that the state's Informational Interest is a valid compelling interest justifying compelled disclosure, that interest ceases to exist the moment the last ballot is cast for the measure.

**106.** Thus, the Act is unconstitutional, both facially and as-applied, to the extent that it requires reports *after* a ballot measure election because such reports are not narrowly tailored to serve a compelling government interests in violation of the First Amendment to the United States Constitution.

### Prayer for Relief

**107.** WHEREFORE, Plaintiffs request the following relief:

    **a.** Declare CGC §§ 84200, 84203, and 84203.3 unconstitutional both facially and as-applied to Committee Plaintiffs, Major Donors, and all other individuals and organizations;

    **b.** Enjoin Defendants from enforcing any reporting requirements after the election on a ballot measure has occurred against Committee Plaintiffs, Major Donors, and all other similar individuals and organizations;

    **c.** Expunge all records of Reports filed by Committee Plaintiffs, Major Donors, and all of their contents, together with all records of Committee Plaintiffs and Major Donors on California's campaign and reporting disclosure system;

    **d.** Grant Plaintiffs ProtectMarriage.com, NOM-California, and the Class of Major Donors their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority, and;

    **e.** Any and all other such relief as may be just and equitable.

**Count 4 – The Act is unconstitutional under the First Amendment, both facially and as-applied, because it does not contain a mechanism for purging all Reports related to a ballot measure after the election has occurred.**

**108.** Plaintiffs reallege and incorporate by reference all allegations made in all the previous paragraphs.

**109.** "The First Amendment is the pillar of a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open . . . ." *Mont. Right to Life*, 999 F. Supp. at 1384.

**110.** "In the free society ordained by our Constitution it is not the government, but the people – individually as citizens and candidates and collectively as associations and political committees – who must retain control over the quantity and range of debate on public issues in a political campaign." *Buckley*, 424 U.S. at 57. "The First Amendment, in particular, serves significant societal interests." *Bellotti*, 435 U.S. at 776.

**111.** In *Buckley*, the Supreme Court held that any significant encroachment on First Amendment rights must survive exacting scrutiny, which requires the government to craft a narrowly tailored law to serve a compelling government interest. *See Buckley*, 424 U.S. at 64.

**112.** The Supreme Court recently reaffirmed that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Davis*, 128 S. Ct. at 2774-75 (*quoting Buckley*, 424 U.S. at 64).

**113.** Nevertheless, the Supreme Court has held that three governmental interests may justify campaign disclosure laws if the regulations are narrowly tailored to serve those interests. *See Buckley*, 424 U.S. at 66-68. First, "disclosure provides the electorate with information as to where the political campaign money comes from and how it is spent by the candidate." *Id.* at 66. (the "Informational Interest"). This information alerts voters to the "interests to which a candidate is most likely to be responsive." *Id.* at 67. Second, disclosure can deter actual corruption and avoid the appearance thereof. *Id.* (the "Corruption Interest"). Lastly, disclosure requirements are an essential "means of gathering the data necessary to detect violations of [contribution limits]." *Id.* at 68. (the "Enforcement Interest").

**114.** However, *Buckley* involved candidate elections, and the Supreme Court has since clarified that the Corruption Interest is simply not present in the context of ballot measure elections. *Bellotti*, 435 U.S. at 790 ("The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue."). The Ninth Circuit has also held that the Enforcement Interest is not applicable in the context of ballot measure elections because the Supreme Court has invalidated contribution limits with respect to ballot measures. *CPLC I*, 328 F.3d at 1105, n. 23 ("The interest in collecting data to detect violations also does not apply since there is no cap on ballot-measure contributions . . . .").

**115.** Furthermore, the Informational Interest is directed at "helping [citizens] make up their mind [sic] on how to vote on ballot measures." *CPLC II*, 507 F.3d at 1179.

**116.** To the extent that the state's Informational Interest is a valid compelling interest justifying compelled disclosure and the publication of said disclosure, that interest ceases to exist the moment the last ballot is cast for the measure.

**117.** Nevertheless, California continues to make ballot measure campaign finance reports available to the public on Cal-Access and at government offices, long after the election has occurred. *See*, Cal-Access, http://cal-access.sos.ca.gov/Campaign/ (making campaign finance reports available from the March 2000 primary through the present).

**118.** Thus, the Act is unconstitutional, both facially and as-applied, to the extent that it permits public access to the reports filed in compliance with the Act after the election on the ballot measure has occurred, and therefore, is not narrowly tailored to serve a compelling government interest in violation of the First Amendment to the United States Constitution.

**Prayer for Relief**

**119.** WHEREFORE, Plaintiffs request the following relief:

    **a.** Declare CGC §§ 81008 and 84600-84612 unconstitutional both facially and as-applied to Committee Plaintiffs, Major Donors, and all and all other individuals and organizations;

1        **b.**    Expunge all records of Reports filed by the Committee Plaintiffs, Major

2               Donors, and all other individuals and organizations, and all of their

3               contents, together with all records of Committee Plaintiffs and Major

4               Donors on California's campaign and reporting disclosure system;

5        **c.**    Grant Plaintiffs ProtectMarriage.com, NOM-California, and the Class of

6               Major Donors their costs and attorneys fees under 42 U.S.C. § 1988 and

7               any other applicable authority, and;

8        **d.**    Any and all other such relief as may be just and equitable.

10      Respectfully submitted,

12
/s/Timothy D. Chandler
Timothy D. Chandler (Cal. Bar No. 234325)    James Bopp, Jr. (Ind. Bar No. 2838-84)
ALLIANCE DEFENSE FUND    Barry A. Bostrom (Ind. Bar No.1912-84)
101 Parkshore Drive, Suite 100    Sarah E. Troupis (Wis. Bar No. 1061515)
Folsom, CA 95630    Scott F. Bieniek (Ill. Bar No. 6295901)
Counsel for All Plaintiffs    BOPP, COLESON & BOSTROM
Designated Counsel for Service    1 South Sixth Street
    Terre Haute, IN 47807-3510
    Counsel for All Plaintiffs

**Second Amended Complaint**    28

**PROOF OF SERVICE**

I, Timothy D. Chandler, am over the age of 18 years and not a party to the within action. My business address is 101 Parkshore Drive, Suite 100; Folsom, California 95630.

On January 22, 2009, I electronically filed the foregoing document described as Second Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Zackary Paul Morazzini
Zackary.Morazzini @doj.ca.gov
*Attorney for Defendants Debra Bowen, Edmund C. Brown, Jr., and*
*Members of the California Fair Political Practices Commission*

Pursuant to Rule 5-135(f), on January 22, 2009, I served the foregoing document described as Second Amended Complaint by placing true and correct copies of the document in sealed envelopes with postage thereon fully prepaid, in the United States mail at Folsom, California, addressed to the following non-CM/ECF participants:

Dean C. Logan
Office of the Registrar-Recorder
12400 Imperial Highway
Norwalk, California 90650

Department of Elections, City and County of San Francisco
c/o Office of the Mayor Gavin Newsom
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102

and

Jan Scully
Office of the District Attorney
901 G Street
Sacramento, California 95814

*Defendants*

In addition, the foregoing document described as Second Amended Complaint will be served on the newly-joined defendant, Dennis J. Herrera, along with the Summons and all previously-filed documents.

**Second Amended Complaint**         29

1    I declare under the penalty of perjury under the laws of the State of California that the

2    above is true and correct. Executed on January 22, 2009.

3
                                                    s/Timothy D. Chandler
4                                                   Timothy D. Chandler (SBN 234325)
                                                    Attorney for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Second Amended Complaint**          30