1   James Bopp, Jr. (Ind. State Bar No. 2838-84)*
    Richard E. Coleson (Ind. State Bar No. 11527-70)**
2   Barry A. Bostrom (Ind. State Bar No.11912-84)*
    Sarah E. Troupis (Wis. State Bar No. 1061515)*
3   Scott F. Bieniek (Ill. State Bar No. 6295901)*
    BOPP, COLESON & BOSTROM
4   1 South Sixth Street
    Terre Haute, IN 47807-3510
5   Telephone:   (812) 232-2434
    Facsimile:    (812) 235-3685
6   Counsel for All Plaintiffs

7   Benjamin W. Bull (AZ Bar No. 009940)**
    ALLIANCE DEFENSE FUND
8   15100 North 90th Street
    Scottsdale, Arizona  85260
9   Telephone:   (480) 444-0020
    Facsimile:    (480) 444-0028
10  Counsel for All Plaintiffs

11  Timothy D. Chandler (Cal. State Bar No. 234325)***
    ALLIANCE DEFENSE FUND
12  101 Parkshore Drive, Suite 100
    Folsom, CA 95630
13  Telephone:   (916) 932-2850
    Facsimile:    (916) 932-2851
14  Counsel for All Plaintiffs

15  * Admitted Pro Hac Vice
    ** Pro Hac Vice Application Pending
16  *** Designated Counsel for Service

17                          **United States District Court**
                            **Eastern District of California**
18                             **Sacramento Division**

19

20

21  **ProtectMarriage.com, et al.,**              Case No. 2:09-CV-00058-MCE-DAD

22                       *Plaintiffs*,            **PLAINTIFFS' REPLY TO STATE DE-**
        *v.*                                      **FENDANTS' OPPOSITION TO PLAIN-**
23                                                **TIFFS' MOTION FOR PRELIMINARY**
                                                  **INJUNCTION**
24  **Debra Bowen, et al.,**
                                                    Date:     January 29, 2009
25                       *Defendants*.              Time:     11:00 a.m.
                                                    Courtroom:  7, 14th Floor
26                                                  Judge Morrison C. England, Jr.

27  **Plaintiffs' Reply to State Defendants'**
    **Opposition to Plaintiffs' Motion for**
28  **Preliminary Injunction**

# Table of Contents

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  The Preliminary Injunction Standards Are
    Controlled by the Context and Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  The First Amendment Context Controls the Standards . . . . . . . . . . . . . . . . . . . . . 1

    B.  The Reasonable-Probability Test Controls the Standards . . . . . . . . . . . . . . . . . . . . 5

    C.  The Context and Test Control the Evidence Required . . . . . . . . . . . . . . . . . . . . . . 5

II. Plaintiffs Meet the Preliminary Injunction Standards . . . . . . . . . . . . . . . . . . . . . . 8

    A.  Plaintiffs Have a Substantial Likelihood of Success on the Merits . . . . . . . . . . . . . 8

    B.  Plaintiffs Have Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.  The Balance of Harms Favors Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.  The Public Interest Favors a Preliminary Injunction . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# Table of Authorities

*Cases*

*Ass'ns and Cmty. Orgs. v. Browning,*
  No. 08-445, slip op. (N.D. Fla. Oct. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Averill v. City of Seattle,*
  325 F. Supp. 2d 1173 (W.D. Wash. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

*Bay Area Citizens Against Lawsuit Abuse,*
  982 S.W.2d 371 (Tx. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brown v. Socialist Workers '74 Campaign Committee,*
  459 U.S. 87 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Buckley v. Valeo,*
  424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Cate v. Oldham,*
  707 F.2d 1190 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Center for Individual Freedom v. Ireland,*
  No. 08-190, slip op. at *51 (S.D. W. Va. Oct. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Center for Individual Freedom v. Ireland,*
  No. 08-1133, slip op. 2008 WL 4642268 (S.D. W. Va. 2008) . . . . . . . . . . . . . . . . . . . . . . . 4

*Dominion Video Satellite, Inc. V. EchoStart Satellite Corp.,*
  269 F.3d 1149 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Elam Constr., Inc. v. Regional Transp. Dist.,*
  129 F.3d 1343 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*FEC v. Hall-Tyner Election Campaign Committee,*
  678 F.2d 416 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*FEC v. NRA,*
  253 F.3d 173 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*FEC v. Wisconsin Right to Life,*
  __ U.S. __, 127 S. Ct. 2652 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 8

*Flynt Distributing Company v. Harvey,*
  434 F.2d 1389 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
  546 U.S. 418 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McConnell v. FEC,*
  540 U.S. 93 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction**                                   ii

*McConnell v. FEC*,
    251 F. Supp. 2d 176 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*NAACP v. Alabama*,
    457 U.S. 449 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*NAACP v. Claiborne Hardware, Inc.*,
    458 U.S. 886 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Oregon Socialist Workers 1974 Campaign Committee v. Paulus*,
    432 F. Supp. 1255 (D. Or. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pac. Frontier v. Pleasant Grove City*,
    414 F.3d 1221 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Republic of Philippines v. Marcos*,
    862 F.3d 1355 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Sammartano v. First Judicial Court*,
    303 F.3d 959 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*SCFC, Inc. v. Visa USA, Inc.*,
    936 F.2d 1096 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Slott v. Plastic Fabricators, Inc.*,
    167 A.2d 306 (Pa. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*University of Texas v. Camenisch*,
    451 U.S. 390 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Utah Licensed Beverage Ass'n v. Leavitt*,
    256 F.3d 1060 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction**                    iii

*Statutes and Administrative Regulations*

Cal. Gov't Code § 84200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Code Regs. tit 2, § 18116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Other Sources*

FEC AOR 2009-01,
    *available at* http://saos.nictusa.com/saos/searchao?SUBMIT=pending . . . . . . . . . . . . . . 7

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction**              iv

# Argument

## I. The Preliminary Injunction Standards Are Controlled by the Context and Test.

## A. The First Amendment Context Controls the Standards.

Where free speech is involved, preliminary injunction standards must be speech-protective. First, preliminary injunction standards involving expressive association must reflect our constitutional principles that "[i]n a republic . . . the people are sovereign," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976), and there is a "'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,'" *id.* (citation omitted). *FEC v. Wisconsin Right to Life*, __ U.S. __, 127 S. Ct. 2652 (2007) ("*WRTL II*") (opinion of Roberts, CJ, stating holding), requires that we recall that we deal with the First Amendment, which mandated that "'Congress shall make no law . . . abridging the freedom of speech,'" *id.* at 2674. So "no law," i.e., "freedom of speech" and expressive association, is the constitutional *default* and must be the overriding *presumption* where expressive association is at issue.

Second, this "no law" default means that when determining the status quo in a "prohibitory" injunction,[1] the status quo is "freedom of speech," i.e., the state of the law *before* a challenged law regulating speech or association was set in place. When a law is challenged as unconstitutional, that *law* has altered the status quo. "[T]he status quo is "the last peaceable uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'" *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (citation omitted). "The purpose of a preliminary injunction is to preserve the status quo as it exists or *previously existed* before the acts complained of, thereby preventing

_____

[1] In contrast to a "prohibitory" injunction, a "mandatory" injunction "affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure that the nonmovant is abiding by the injunction." *SCFC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096,1099 (10th Cir.1991). Mandatory injunctions usually alter the status quo and a movant must show a heightened likelihood of success. *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir.1999) (per curiam).

**Plaintiffs' Reply to State Defendants'
Opposition to Plaintiffs' Motion for
Preliminary Injunction**     1

irreparable injury or gross injustice." *Slott v. Plastic Fabricators, Inc.*, 167 A.2d 306 (Pa. 1961) (emphasis added). States may not bootstrap a purported "status quo" and an enforcement interest by altering the status quo and then assert that preliminary injunctions must be denied because the new law is the status quo and states have enforcement interests.

Third, the "freedom of speech" presumption means that First Amendment protections must be incorporated into the preliminary injunction standards, not limited to merits consideration. So if exacting or strict scrutiny applies, as here, the preliminary injunction burden shifts to the state to prove the elements of strict scrutiny, just as the state has the burden on the merits:

> The Government argues that, although it would bear the burden of demonstrating a compelling interest as part of its affirmative defense at trial on the merits, the [plaintiff] should have borne the burden of disproving the asserted compelling interests at the hearing on the preliminary injunction. This argument is foreclosed by our recent decision in *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004). In *Ashcroft*, we affirmed the grant of a preliminary injunction in a case where the Government had failed to show a likelihood of success under the compelling interest test. We reasoned that '[a]s the Government bears the burden of proof on the ultimate question of [the challenged Act's] constitutionality, respondents [the movants] must be deemed likely to prevail unless the Government has shown that respondents' proposed less restrictive alternatives are less effective than [enforcing the Act].' Id., at 666. That logic extends to this case; here the Government failed on the first prong of the compelling interest test, and did not reach the least restrictive means prong, but that can make no difference. The point remains that the burdens at the preliminary injunction stage track the burdens at trial.

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006).[2]

Fourth, because exacting or strict scrutiny is the antithesis of deference or a presumption of constitutionality, no deference or favorable presumption must be afforded the regulation of speech in preliminary injunction balancing. This is required by the "freedom of speech" presumption and because "the *Government* must prove that applying [the challenged provision

---

[2] *See also Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1060, 1072-73 (10th Cir. 2001) (placing the burden on the government to justify its speech restrictions in a preliminary injunction hearing); *Pac. Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1231 (10th Cir. 2005) (in First Amendment challenge, government bears burden of establishing that content-based restriction will "more likely than not" survive strict scrutiny); *Ass'ns and Comty. Orgs. v. Browning*, No. 08-445, slip. op. at 11 (N.D. Fla. Oct. 29, 2008) (preliminary injunction burden tracks trial burden).

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction**                    2

to the communication at issue] furthers a compelling interest and is narrowly tailored to achieve

that interest. *WRTL II*, 127 S. Ct at 2664 (emphasis in original).

Fifth, the necessary incorporation of First Amendment protections into preliminary

injunction standards requires that in determining the balance of harms and the public interest,

courts must apply *WRTL II*'s requirement that "'[w]here the First Amendment is implicated, the

tie goes to the speaker, not the censor.'" *Center for Individual Freedom v. Ireland*, No. 08-190,

slip. op. at *51 (S.D. W. Va. Oct. 17, 2008) (mem. op. granting prelim. inj.) (*quoting WRTL II*,

127 S. Ct. at 2669) (applying principle to consideration of public harm).

Sixth, the "freedom of speech" presumption means that state officials have no per se

interest in regulating expressive association. Their first loyalty should be to the First Amend-

ment. Beyond that, their only interest is in enforcing the laws *as they exist*, with any interest in

the particular *content* of those laws being beyond their interest in the preliminary injunction

balancing of harms: "It is difficult to fathom any harm to Defendants [enforcement officials] as

it is simply their responsibility to enforce the law, whatever it says." *Id.*

Seventh, where the government wants to argue that there will be a "wild west" scenario if a

law of questionable constitutionality is preliminarily enjoined and "freedom of speech" prevails,

the government must provide proof. *See* State Defendants' Opposition to Plaintiffs' Motion for

Preliminary Injunction at 8 ("State Opp.") Where First Amendment rights are involved, the

government "must do more than simply posit the existence of the disease sought to be cured. It

must demonstrate that the recited harms are real, not merely conjectural, and that the regulation

will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. FCC*,

512 U.S. 622, 664 (1994) (internal citation omitted).[3] Against this need for proof that the sky

---

[3] S*ee also Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 803 n. 22
(1984) ("[This Court] may not simply assume that the ordinance will always advance the
asserted state interests sufficiently to justify its abridgement of expressive activity."). *FEC v.
NRA*, 254 F.3d 173, 191 (D.C. Cir. 2001) (same); *see also id.* at 192 (FEC may not *speculate*

will fall if a law of questionable constitutionality is preliminarily enjoined is the paramount fact that "the protection of First Amendment rights is very much in the public's interest." *Center for Individual Freedom v. Ireland*, Nos. 08-190 & 08-1133, 2008 WL 4642268, at *27.

Under these principles, preliminary injunctive relief is not only possible but has been granted in disclosure-exemption cases. In *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87 (1981), the northern Ohio district court "entered a temporary restraining order barring enforcement of the disclosure requirements pending a determination of the merits," which TRO was renewed by the southern Ohio district court on transfer. *Id.* at 90. In *Averill v. City of Seattle*, 325 F. Supp. 2d 1173 (W.D. Wash. 2004), a federal district court in the Ninth Circuit issued a preliminary injunction until the case could be resolved on summary judgment, noting that a candidate and campaign committee had submitted evidence that those with similar views (though not plaintiffs themselves) had "been subjected to threats and harassment." *Id.* at 1174. *Averill* provides much helpful guidance on how the reasonable-probability test is to be interpreted and applied, and it was decided after *McConnell v. FEC*, 540 U.S. 93 (2003) clarified the proper reasonable-probability test and application. Under *Averill*'s analysis, present Plaintiffs should also receive a preliminary injunction.[4]

---

that NRA received more because it did not record contributions of under $500, citing *Turner*, 512 U.S. at 664).

[4] By contrast, the case on which State Defendants primarily rely, *Oregon Socialist Workers 1974 Campaign Committee v. Paulus*, 432 F. Supp. 1255 (D. Or. 1977), was decided even before the Supreme Court applied *Buckley*'s reasonable-probability test in *Brown*, 459 U.S. 87. The dissent in *Oregon Socialist Workers* was clearly correct in voting for disclosure exemption, and the two-member majority plainly betrayed their hostility and misunderstanding of the test when they (1) asserted that "persons supporting specific parties and candidates should be willing to 'stand up and be counted,'" 432 F. Supp. at 1259, and (2) thought they could do balancing of harms after evidence was submitted that showed a reasonable probability of threats, harassment, or reprisals, *id.* at 1259-60.

**B. The Reasonable-Probability Test Controls the Standards.**

Plaintiffs must meet only *one* test for a disclosure exemption, i.e., whether there is a "'reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" *McConnell*, 540 U.S. at 198 (citation omitted). If that test is met, Plaintiffs must receive a blanket exemption. There is no further test or balancing because the Supreme Court has already done the balancing and established the reasonable-probability test as the sole criterion. *Id. See* State Opp. at 11-12, 16-20. This test governs the application of the preliminary injunction standard.

So as to the likelihood of success on the merits, Plaintiffs must only prove that they are substantially likely to establish a reasonable probability of threats, harassment, or reprisals. As to irreparable harm, there is irreparable harm if there exists a reasonable probability of threats, harassment, or reprisals. As to the balancing of equities and the public interest, it must be recalled that where the reasonable-probability test is met, the Supreme Court has already struck the balance of interests and established a test whereby the presence of a reasonable probability of threats, harassment, or reprisals is sufficient to obtain a disclosure exemption. So where there is a substantial likelihood of success on the merits and irreparable harm, the balancing of harms and public interest begins with a strong tilt of the scales against the disclosure requirement.

**C. The Context and Test Control the Evidence Required.**

The First Amendment context and the reasonable-probability test also govern the quantum and quality of evidence that must be presented to establish a reasonable probability of threats, harassment, and reprisals. First, in *Buckley* the Court created the reasonable-probability test precisely in response to, and in rejection of, the argument that the proof of a chill on expressive association would be impossible. *Buckley*, 424 U.S. at 73. An opinion dissenting in part from the appellate opinion in *Buckley* argued that a blanket exemption must be created for minor parties because the "evils of chill and harassment are largely incapable of formal proof." *Id.*

(citation omitted). The dissent noted the difficulty of obtaining "witnesses who are too fearful to contribute but not too fearful to testify about their fear." *Id.* at 74. The Supreme Court rejected this argument by its establishment of the reasonable-probability test and mandate of "sufficient flexibility" in the evidence to fit the very situation where witnesses would be difficult to obtain precisely because they are chilled by fear of threats, harassment, or reprisals. *Id.* at 74. *See* State Opp. at 16-17.

Second, the Supreme Court has rejected the notion that a causal link must be established between the threats and public disclosure. *Id.* ("A strict requirement that chill and harassment be directly attributable to the specific disclosure from which the exemption is sought would make the task even more difficult."). *See* State Opp. at 15. The critical question, therefore, is not whether the individual was harassed because his name was disclosed for contributing to an organization supporting Proposition 8, but whether the threats and harassment presented to the Court are related to support of Proposition 8 in general.[5]

Third, as to the quality of evidence, the "sufficient flexibility" standard allows an organization to rely not only on evidence of specific incidents of harassment directed at its members or the organization itself, but also on evidence directed at other individuals and organizations holding similar views. Thus, in *Averill v. City of Seattle*, 325 F. Supp. 2d 1173, the court granted an exemption to a specific candidates campaign committee primarily upon evidence of threats and harassment directed at the Freedom Socialist Party and Radical Women generally. *Id.* at 1175. The only additional evidence submitted by the committee consisted of several harassing and crank calls directed at contributors to the committee. *Id.* at 1178. Plaintiffs are not required to present evidence that its own members have been harassed.

---

[5] The Second Circuit provides a helpful application of the reasonable-probability test in *FEC v. Hall-Tyner Election Campaign Committee*, 678 F.2d 416 (2d Cir. 1982), in which it, inter alia, makes clear that those seeking exemption have no burden to prove "harassment will certainly follow compelled disclosure" because "breathing space" is required in the First Amendment context. *Id.* at 421.

**Plaintiffs' Reply to State Defendants'
Opposition to Plaintiffs' Motion for
Preliminary Injunction** 6

Fourth, both the context of a preliminary injunction and the "sufficient flexibility" standard permit Plaintiffs to rely on evidence that would otherwise be inadmissible hearsay. *See Republic of Philippines v. Marcos*, 862 F.3d 1355, 1363 (9th Cir. 1988) (district court may consider hearsay evidence in the context of a preliminary injunction); *Flynt Distributing Company, Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (given the urgency of a preliminary injunction, the court may rely upon hearsay to prevent irreparable harm). *See* State Opp. at 13. Even the Socialist Workers Party, a party that has been subject to government and private harassment for over sixty years, relies heavily upon similar hearsay evidence. *See* FEC AOR 2009-01, *available at* http://saos.nictusa.com/saos/searchao?SUBMIT=pending (wherein the SWP relies on numerous newspaper articles, similar in kind to those submitted by Plaintiffs, to substantiate recent incidents of threats and harassment directed at it and its members as well as to demonstrate the effect that those articles have on the association rights of its members).[6]

Fifth, the reasonable-probability test does not require that threats, harassment, or reprisals be substantial or severe, only that such threats, harassment, or reprisals exist. *See* State Opp. at 9-11. If they exist, there is a disclosure exemption. *Buckley*, 424 U.S. at 74. The courts have considered everything from boycotts to death threats to determine whether there is a reasonable probability of future threats and harassments. *See, e.g.*, *Brown*, 459 U.S. at 99 (threatening phone calls and hate mail, the burning of organizational literature, destruction of members' property, police harassment, and shots fired into organization's office); *Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371 (boycotts). The severity of reprisals directed at supporters of Proposition 8 is unimportant provided Plaintiffs can demonstrate that the reprisals resulted from support of Proposition 8.[7]

---

[6] *See Plaintiffs' Response to State Defendants' Objections to Plaintiffs' Evidence*, submitted concurrently herewith and incorporated herein by this reference.

[7] In fact, *Averill* recognized that "even small threats" are sufficient. 325 F. Supp. 2d at 1176.

**Plaintiffs' Reply to State Defendants'
Opposition to Plaintiffs' Motion for
Preliminary Injunction**                7

Sixth, there need only be sufficient evidence of threats, harassment, or reprisals to demonstrate a reasonable probability of the same. State Opp. at 12-16. The context of a preliminary injunction further guides this inquiry. "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

## II. Plaintiffs Meet the Preliminary Injunction Standards.

## A. Plaintiffs Have a Substantial Likelihood of Success on the Merits.

The first preliminary injunction issue is whether Plaintiffs have a substantial likelihood that they will prove that there is a reasonable probability of threats, harassment, or reprisals. Plaintiffs will first refute State Defendants' efforts to alter the test and then apply the proper test to the facts and show that they have a substantial likelihood of showing such a reasonable probability. But as noted above, State Defendants bear the burden of, in *WRTL II*'s words, showing "that a compelling interest supports *each application* of a statute restricting speech," 127 S. Ct. at 2671.

The Supreme Court's latest statement and application of the reasonable-probability test is in *McConnell v. FEC*, 540 U.S. 93 (2003). There the Court affirmed a three-judge district court's statement and application of the test. *Id.* at 197-99. That statement and application control here and supersede any prior formulations by the Supreme Court and all inconsistent analyses by other courts.

First, there is only *one* test for a disclosure exemption, the reasonable-probability test: "'The evidence offered need show only a reasonable probability that the compelled disclosure of

a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* at 198 (*quoting Buckley*, 424 U.S. at 74).[8]

Second, there is no *second* requirement of evidence that the reasonable probability of threats, harassment, or reprisals will impair the ability of an association and its members to engage in political speech. Nowhere in *McConnell* is there such a requirement. In fact, the three-judge district court's analysis that the Supreme Court affirmed in *McConnell* said that when there is a "constitutional challenge[] claiming the disclosure will chill associational rights," then there must be "evidence which shows a reasonable probability that the compelled disclosure . . . will subject [disclosed donors] to threats, harassment, or reprisals . . . ." 251 F. Supp. 2d 176, 245-46 (D.D.C. 2003) (per curiam). In other words, if the reasonable probability test is met, then chill is presumed, as is the reduced ability of the members to associate for expressive speech.

Third, the disclosure exemption and reasonable-probability test do not apply solely to minor parties. *McConnell* expressly affirmed the analysis and holding of the district court, which applied the reasonable-probability test to entities seeking disclosure exemption that were not minor parties, i.e., to the ACLU, NRA, Associated Builders and Contractors, Associated

_____

[8] It matters not that some of the threats, harassment, or reprisals may constitute constitutionally protected speech because the question is whether the government may *enable* that activity by compelling disclosure—it may not. *See NAACP v. Alabama*, 457 U.S. 449, 463 *1958) ("The crucial factor is the interplay of governmental and private action, for it is only after the initial exertion of state power represented by the production order that private action takes hold."). So while it may be legal for people to boycott a business supporting or opposing Proposition 8 (although secondary boycotts are generally illegal, *see NAACP v. Claiborne Hardware, Inc.*, 458 U.S. 886, 912 (1982)), the First Amendment forbids government from compelling *disclosure* of who is supporting or opposing the Proposition where the disclosure may enable retaliation. The issue is free expressive association. Similarly, it matters not if there are laws that would make some retaliatory activity illegal. The existence of those laws does not mean that the state may then compel disclosure where there is a reasonable probability of retaliation because the issue is about government compelling disclosure, and the constitutional "no law" default immediately applies where there is a reasonable probability that the government would enable retaliation for expressive association.

General Contractors of America and its PAC, and a Chamber of Commerce coalition. 251 F.

Supp. 2d at 245-47. None of these was a political party, and whether they could be perceived as

"minor" associations or not might depend on the time, place, and audience. If the exemption

turned on minor party status, this court and the Supreme Court would simply have rejected their

argument on that basis, instead of rejecting them based on the *nature* of the evidence they

presented. *See id.* at 247.[9] The First Amendment protects all persons and associations, not only

"minor" ones.

Fourth, *McConnell* nowhere requires that the evidence for the reasonable probability be

substantial. In fact, *Buckley* expressly answered the argument that cases of this sort would be

"'incapable of proof'" because witnesses would be chilled by providing the reasonable-

probability test premised upon "sufficient flexibility in the proof" and the Court's assumption

that courts will not "be insensitive." 424 U.S. at 74 (citation omitted).

Fifth, *McConnell* nowhere requires that there be *serious* threats, harassment, or reprisals. It

must be recalled that the default is "no law," "freedom of speech," and protection of the

expressive-association privacy right, so anytime there is a reasonable probability of threats,

harassment, or reprisal resulting from disclosure, then the default mode immediately applies.

That is essential to our system of government, which rejects intimidation as a tool of power.

Sixth, *McConnell* nowhere requires proof that the disclosure *caused* the threats, harass-

ment, or reprisals. And *Buckley* expressly rejected the requirement that the harm be "directly

attributable" when when it adopted the reasonable-probability test and "flexibility" proof. 424

U.S. at 74.

---

[9] *Buckley* actually rejected an effort to define what would constitute a "minor" party
because such a criterion only reflected "past or present political strength," which could change,
and identified the "critical factor" as rather "the possibility that disclosure will impinge upon
protected associational activity." 424 U.S. at 73-73. So even in *Buckley*, minor party status was
not required.

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction** 10

Seventh, once the reasonable-probability test is applied, *McConnell* recognizes no further balancing. If there is such a reasonable probability, then disclosure may not be compelled.

Applying these standards, Plaintiffs have demonstrated they have a substantial likelihood of showing a reasonable probability of threats, harassment, or reprisals. Plaintiffs have presented sufficient evidence, similar in kind to that considered by other courts granting a disclosure exemption, to warrant the imposition of a preliminary injunction pending a final resolution of this case on the merits.

Plaintiffs have submitted nine declarations, setting forth evidence of threats, harassment, and reprisals ranging from boycotts, Decl. of John Doe #1, to death threats, Decl. of John Doe #9. Each is unquestionably tied to the individual's support of Proposition 8 and State Defendants never question this fact. State Opp. at 15. State Defendants' only objection is that Plaintiffs cannot prove that the threats and harassment are directly attributable to disclosure on the Secretary of State's website. *Id.* As previously discussed, such a causal link is not required. *Buckley*, 424 U.S. at 74. Once Plaintiffs have established that individuals have been subjected to threats and harassment because of their support of Proposition 8, the reasonable-probability test presumes that public disclosure will result in similar threats and harassment. The reason the causal link is not required is quite obvious – there is little difference between someone being harassed because his or her picture appeared in the newspaper, *see, e.g.*, Decl. of John Doe #8, and someone being harassed because his or her name appeared on the state's public disclosure database – both can be used to quickly identify a person as a supporter of Proposition 8. To demonstrate that this analytical leap is justified, one need to look no further than the declaration of John Doe #6, who was undoubtedly targeted because her name appeared in the public disclosure database.

These declarations are supplemented by countless newspapers articles that highlight additional threats, harassment, and reprisals directed at supporters of Proposition 8. *See* Decl. of Sarah Troupis. Again, the evidence includes incidents of everything from boycotts to death

threats. Again, each is unquestionably tied to the individual's or organization's support of Proposition 8. State Defendants object to the use of this evidence as inadmissible hearsay, but as previously discussed, the context of a preliminary injunction and the "sufficient flexibility" standard allow the Court to consider this evidence. State Opp. at 13. Moreover, the numerous articles demonstrate that there actually is a strong likelihood of the chill that must be presumed.

State Defendants also question the appropriateness of citing examples of boycotts and other protected First Amendment activity as evidence of the reasonable probability of threats, harassment, or reprisals.[10] State Opp. at 14. But it must be recalled that the default is "no law," "freedom of speech," and protection of the expressive association privacy right. With this in mind, it is quite obvious why these examples, while perhaps not the most shocking of reprisals directed at supporters of Proposition 8, are also impermissible if enabled in part by the compelled disclosure provisions. There is a difference in kind between a boycott directed at an organization that chooses to makes its public policy position known, and one that was forced to make its position known at the hands of the state. And even if there were no difference, it continues to represent a reprisal directed at an organization merely for its support of Proposition 8.

The reason that the applicants in *Buckley* and *McConnell* did not get the requested exemptions was because their evidence was of chill, not threats, harassment, or reprisals, so it was different in kind from what is required. *Buckley*, 424 U.S. at 72; *McConnell*, 540 U.S. at 199 (noting that the parties had submitted evidence of chill but failed to provide any specific evidence about the basis for those concerns). Plaintiffs' evidence is entirely consistent with what is required to meet the reasonable-probability test. Plaintiffs have demonstrated specific incidents of reprisals directed at supporters of Proposition 8 ranging from boycotts, *see*, *e.g.*

---

[10] This topic is also addressed above. *See supra* at n.7.

Decl. of John Doe #1, to death threats, *see*, *e.g.*, Decl. of John Doe #9, and have presented sufficient evidence at this stage of the litigation to warrant a preliminary injunction.

**B. Plaintiffs Have Irreparable Harm.**

Since the controlling standard for disclosure exemption is the reasonable-probability test, Plaintiffs' irreparable harm exists if there is a reasonable probability that donor disclosure will result in threats, harassment, or reprisals against donors. That reasonable probability has already been proven above. Consequently, there is irreparable harm.

As to donors not yet disclosed, the irreparable harm will begin on February 2, if a preliminary injunction is not forthcoming. As to donors already disclosed, the irreparable harm of a reasonable probability of threats, harassment, and reprisals is ongoing and must be halted as soon as possible by eliminating public access to donor records. While it is possible that information from public records is already in the hands of those who will, with reasonable probability, seek to engage in threats, harassment, or reprisals, the "crucial factor" is halting "the interplay of government and private action," *NAACP v. Alabama*, 357 U.S. at 463, as soon as possible, now that the reasonable probability has arisen. The problem was caused by government-compelled disclosure and the government now has a constitutional duty to do whatever it can to mitigate the problem.

**C. The Balance of Harms Favors Plaintiffs.**

In balancing the harms it is important to remember exactly what is at stake if a preliminary injunction is or is not granted. On February 2, in the absence of a preliminary injunction, Plaintiffs must file a report that contains the name, address, occupation, and employer of 1,597 individuals and organizations that supported Proposition 8 that have not been previously reported on a campaign statement of the Committee Plaintiffs[11]. *Decl. of David Bauer in*

---

[11] The report is officially due on January 31, 2009. CGC § 84200. As State Defendants correctly point out, because the reporting date falls on a Saturday, Plaintiffs are not required to file the report with the Secretary of State until the next business day, Monday, February 2,

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction**                    13

*Support of Plaintiffs' Motion for Preliminary Injunction* at ¶ 10. All told, some 34,000 citizens

that supported Proposition 8 will have had their personal information posted on the Secretary of

State's website,  28,000 of which gave less than $1,000. *Id*. As the State Defendants so aptly

point out, once the bell has been rung and the names of contributors have been disclosed, it is

extremely difficult to undo the harm to Plaintiffs' First Amendment rights.[12] State Opp. at 2

(discussing the fact that several other websites have captured the information posted on the

Secretary of State's website and have independently posted it). In considering a request for a

preliminary injunction, the Court must be mindful of the unique First Amendment concerns

present in this case and the irreparable harm that will occur if disclosure is required. *See*

*Sammartano v. First Judicial Court, in and for the County of Carson City*, 303 F.3d 959, 974

(9th Cir. 2002) (discussing judicial preference for granting preliminary injunctions to protect a

plaintiff's First Amendment rights pending a resolution of the trial on the merits); *Elam Constr.,*

*Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir. 1997) (discussing, in the context

of a request for injunctive relief, that "the public interest . . . favors plaintiffs' assertion of their

First Amendment rights"); *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (noting "it is

always in the public interest to prevent the violation of a party's constitutional rights").

Conversely, the State will suffer relatively little harm if a preliminary injunction is granted

at this stage of the litigation. The State has conceded that nearly three months elapse after an

election before a committee is required to provide final reports. State Opp. at 32. A preliminary

injunction does nothing more than extend the reporting date until the Court can reach a decision

---

2009.  Cal. Code Regs. tit. 2, § 18116.

[12] While State Defendants are correct that it may be too late to completely undo the harm to
over 32,000 of Plaintiffs' donors, a preliminary injunction, requiring the Secretary of State to
remove these individuals from the website, and requiring the Secretary of State, Dean C.
Logan, and the Department of Election for the City and County of San Francisco to stop
making paper copies of the reports available would go a long way in reducing the possibility of
future threats, harassment, and reprisals against supporters of Proposition 8.

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction**                                  14

on the merits. The State fails to present any argument as to why such a delay would fail to satisfy the State's proffered interest in providing the public with a "complete an [sic] accurate picture of the political playing field." State Opp. at 36. Considered in light of the real, immediate, and irreparable harm that will be suffered by Plaintiffs in the absence of a preliminary injunction, the balance of harms tips decidedly in favor of Plaintiffs.

Moreover, the analytical context of this preliminary injunction must be recalled. Where the requisite reasonable probability is established, there is no more balancing. The Supreme Court has already done the balancing and held that once the reasonable probability has been established then compelled disclosure must be ended. So if, for preliminary injunction purposes, Plaintiffs have established the requisite reasonable probability, then, for preliminary injunction purposes, the balance of harms should also tilt in their favor on this ground alone.

**D. The Public Interest Favors a Preliminary Injunction.**

This nation has a "'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Buckley*, 424 U.S. at 14 (citation omitted). Debate is not "uninhibited" where citizens are chilled from associating to amplify their voices on a public issue because the government compels disclosure of information in the face of a reasonable probability of threats, harassment, or reprisals. It is for this reason that we have the secret ballot. It is for this reason that the right to privacy of expressive association overcomes any government interest in disclosure where civil discourse becomes uncivil. While there will always be a certain amount of rough and tumble in public debate, the government may not facilitate exposing citizens to a reasonable probability of threats, harassment, or reprisals.

To do otherwise is to reward such activity. To do otherwise is to move away from democratic discourse with persuasion as the key to political victory and head in the direction of mob rule and domination by intimidation. That is a road down which we as nation have determined not to go. For this reason, we protect expressive association, even by groups hostile to our form

of government, where there is an effort to intimidate. Intimidation chills free association and free expression, the very bedrock of our system of government.

This is the answer to the State Defendants' non-constitutional argument that, given the rough and tumble of California politics surrounding ballot measures, the state might never have disclosure if the reasonable-probability test is recognized and applied. State Opp. at 8. Not applying this constitutional test would lead to further incivility. The current issue has been around for some time and promises to continue for the foreseeable future. What applies to one side and one issue in one election might well apply to another side and other issues later, if intimidation is to be facilitated and rewarded. The Constitution requires that if either side creates a climate in which there is a reasonable probability that disclosure will result in threats, harassment, or reprisals as a result of the disclosure, then the other side may not be compelled to disclose. Disclosure might well disappear for both sides on controversial issues, which bear special scrutiny. But there can be no other choice if our very way of government is to survive. And that is in the public interest.

# Conclusion

Plaintiffs have met the standards for a preliminary injunction. The requested preliminary injunction should be granted so that the interests of Plaintiffs and their members may be protected while this case continues to a decision on the merits.

Respectfully submitted,

 /S/ James Bopp, Jr.

Benjamin W. Bull (AZ Bar No. 009940)**
ALLIANCE DEFENSE FUND
15100 North 90th Street
Scottsdale, Arizona 85260
Telephone:   (480) 444-0020
Facsimile:    (480) 444-0028
Counsel for All Plaintiffs

Timothy D. Chandler (Cal. Bar No. 234325)***
ALLIANCE DEFENSE FUND
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Counsel for All Plaintiffs
Designated Counsel for Service

James Bopp, Jr. (Ind. Bar No. 2838-84)*
Richard E. Coleson (Ind. Bar No. 11527-70)**
Barry A. Bostrom (Ind. Bar No.11912-84)*
Sarah E. Troupis (Wis. Bar No. 1061515)*
Scott F. Bieniek (Ill. Bar No. 6295901)*
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
Counsel for All Plaintiffs


* *Admitted Pro Hac Vice*
** *Pro Hac Vice Application Pending*
*** *Designated Counsel for Service*

**Plaintiffs' Reply to State Defendants'
Opposition to Plaintiffs' Motion for
Preliminary Injunction**                    17

# CERTIFICATE OF SERVICE

I, James Bopp, Jr., am over the age of 18 years and not a party to the within action. My business address is 1 South Sixth Street, Terre Haute, Indiana 47807.

On January 26, 2009, I electronically filed the foregoing document described as Plaintiffs' Reply to State Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Zackary Paul Morazzini
Zackary.Morazzini @doj.ca.gov
*Attorney for Defendants Debra Bowen, Edmund C. Brown, Jr.,*
*and Members of the California Fair Political Practices Commission*

Judy Welch Whitehurst
jwhitehurst@counsel.lacounty.gov
*Attorney for Defendant Dean C. Logan*

Terence John Cassidy
tcassidy@porterscott.com
*Attorney for Defendant Jan Scully*

Mollie Mindes Lee
mollie.lee@sfgov.org
*Attorney for Defendants Dennis J. Herrera and*
*Department of Elections - City and Count of San Francisco*

I declare under the penalty of perjury under the laws of the State of Indiana that the above is true and correct. Executed on January 26, 2009.


/s/ James Bopp, Jr._____
James Bopp, Jr. (Ind. State Bar No. 2838-84)
Counsel for All Plaintiffs

**Plaintiffs' Reply to State Defendants'**
**Opposition to Plaintiffs' Motion for**
**Preliminary Injunction**                    18