1   James Bopp, Jr. (Ind. State Bar No. 2838-84)*
    Richard E. Coleson (Ind. State Bar No. 11527-70)*
2   Barry A. Bostrom (Ind. State Bar No.11912-84)*
    Sarah E. Troupis (Wis. State Bar No. 1061515)*
3   Scott F. Bieniek (Ill. State Bar No. 6295901)*
    BOPP, COLESON & BOSTROM
4   1 South Sixth Street
    Terre Haute, IN 47807-3510
5   Telephone:   (812) 232-2434
    Facsimile:   (812) 235-3685
6   Counsel for All Plaintiffs

7   Benjamin W. Bull (AZ Bar No. 009940)*
    ALLIANCE DEFENSE FUND
8   15100 North 90th Street
    Scottsdale, Arizona 85260
9   Telephone:   (480) 444-0020
    Facsimile:   (480) 444-0028
10  Counsel for All Plaintiffs

11  Timothy D. Chandler (Cal. State Bar No. 234325)**
    ALLIANCE DEFENSE FUND
12  101 Parkshore Drive, Suite 100
    Folsom, CA 95630
13  Telephone:   (916) 932-2850
    Facsimile:   (916) 932-2851
14  Counsel for All Plaintiffs

15  * Admitted Pro Hac Vice
    ** Designated Counsel for Service
16

**United States District Court**
**Eastern District of California**
**Sacramento Division**

| | |
|---|---|
| **PROTECTMARRIAGE.COM, et al.,** | Case No. 2:09-CV-00058-MCE-DAD |
| **Plaintiffs,** | **PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **vs.** | |
| **DEBRA BOWEN, et al.,** | Date:        Aug. 13, 2009 |
| **Defendants.** | Time:        2:00 P.M. |
| | Courtroom:   7, 14th Floor |
| | Judge Morrison C. England, Jr. |

1    Plaintiffs ProtectMarriage.com—Yes on 8, a Project of California Renewal

2  ("**ProtectMarriage.com**"), National Organization for Marriage—Yes on 8, Sponsored by

3  National Organization for Marriage ("**NOM-California**"), John Doe #1, an individual and as a

4  representative of the proposed Class of Major Donors ("**Major Donors**"), and National

5  Organization for Marriage California PAC ("**NOM-California PAC**"), respectfully submit the

6  following proposed Statement of Undisputed Facts in support of their Motion for Summary

7  Judgment:

8                          **Statement of Undisputed Facts**

9      The facts relevant to the disposition of this case are not in dispute. This case is a pre-

10  enforcement facial and as-applied constitutional challenge to California's Political Reform Act

11  of 1974, Cal. Gov't Code ("CGC") § 81000 *et seq.*, as amended (the "PRA").

12      **1.**    Plaintiff ProtectMarriage.com is a primarily formed ballot committee organized to

13  support Proposition 8. (3d Am. Compl. ¶ 30.)

14      **2.**    Plaintiff NOM-California is also a primarily formed ballot committee organized to

15  support Proposition 8. (3d Am. Compl. ¶¶ 31 & 32.)

16      **3.**    Plaintiff John Doe #1, an individual, and on behalf of the proposed class of major

17  donors, also supported Proposition 8 and is a committee for purposes of the PRA because he

18  contributed $10,000 or more to a committee in support of Proposition 8. (3d Am. Compl. ¶¶ 13

19  & 34.)

20      **4.**    Plaintiff NOM-California PAC was organized on February 6, 2009, and is a general

21  purpose committee for purposes of the PRA because it intends to support candidates and ballot

22  measures related to the issue of marriage.[1] (3d Am. Compl. ¶ 33.)

23  //

24  //

25  _____

26      [1] Collectively, ProtectMarriage.com, NOM-California, the Major Donors, and NOM-
    California PAC are referred to throughout simply as "**Plaintiffs**." Together,
27  ProtectMarriage.com and NOM-California are referred to as "**Ballot Committee Plaintiffs**."
    Together, ProtectMarriage.com, NOM-California, and NOM-California PAC are referred to as
28  "**Committee Plaintiffs**."

**Plaintiffs' Statement of Undisputed Facts**

**5.** Defendant Debra Bowen is the Secretary of State for the State of California and is sued in her official capacity. Plaintiffs are required to file copies of all reports with Defendant Bowen. (3d Am. Compl. ¶ 15.)

**6.** Defendant Edmund G. Brown, Jr. is the Attorney General for the State of California and is sued in his official capacity. Defendant Brown has the authority to bring criminal and civil actions against individuals or organizations that fail to comply with provisions of the PRA. (3d Am. Compl. ¶ 16.)

**7.** Defendant Dean C. Logan is the Registrar-Recorder for Los Angeles County, California. Plaintiffs are required to file copies of all reports with Defendant Logan. Defendant Logan is sued in his official capacity. (3d Am. Compl. ¶ 17.)

**8.** Plaintiffs are also required to file copies of all reports with Defendant Department of Elections—City and County of San Francisco. (3d Am. Compl. ¶ 18.)

**9.** Defendant Jan Scully is the District Attorney for Sacramento County, California, and is sued in her official capacity and on behalf of the Class of District Attorneys. Defendant Scully and all other District Attorneys in the State of California have authority to bring criminal and civil actions against individuals or organizations that fail to comply with the provisions of the PRA at issue herein. (3d Am. Compl. ¶ 19.)

**10.** Defendant Dennis J. Herrera is the City Attorney for the City and County of San Francisco, California and is sued in his official capacity and on behalf of the Class of Elected City Attorneys. Defendant Herrera and all other Elected City Attorneys have authority to bring criminal and civil actions against individuals or organizations that fail to comply with the provisions of the PRA at issue herein. (3d Am. Compl. ¶ 20.)

**11.** Defendant Ross Johnson is the Chairman of the Fair Political Practices Commission ("FPPC"), and is sued in his official capacity. Defendants Timothy Hodson, Eugene Huguenin, Jr., Robert Leidigh, and Ray Remy are members of the FPPC and are sued in their official capacity. The FPPC has the "primary responsibility for the impartial, effective administration and implementation of [the PRA]," including investigation of possible violations of the PRA based upon sworn complaints of any person or upon its own initiative. The FPPC has the

**Plaintiffs' Statement of Undisputed Facts**

1   authority to order Plaintiffs to comply with provisions of the PRA and to impose civil penalties.

2   (3d Am. Compl. ¶21.)

3       **12.** The PRA defines a "committee" in relevant part as:

4   [A]ny person or combination of persons who directly or indirectly does any of the
    following: (a) receives contributions totaling one thousand dollars ($1,000) or more in a
5   calendar year; (b) makes independent expenditures totaling one thousand dollars
    ($1,000) or more in a calendar year; (c) makes contributions totaling ten thousand
6   dollars ($10,000) or more in a calendar year to or at the behest of candidates or
    committees . . . . CGC § 82013.
7
        **13.** A "person" is defined as:
8
    [A]n individual, proprietorship, firm, partnership, joint venture, syndicate, business,
9   trust, company, corporation, limited liability company, association, committee, and any
    other organization or group of persons acting in concert. CGC § 82047.
10
        **14.** A "primarily formed committee" ("PFC") is defined as:
11
    [A] committee pursuant to subdivision (a) of Section 82013 which is formed or exists
12  primarily to support or oppose any of the following: (a) a single candidate; (b) a single
    measure; (c) a group of specific candidates being voted upon in the same city, county,
13  or multicounty election; two or more measures being voted upon in the same city,
    county, multicounty, or state election. CGC § 82047.5.
14
        **15.** A "general purpose committee" is defined as:
15
    All committees purusuant to subdivision (b) or (c) of Section 82013, and any committee
16  pursuant to subdivision (a) of Section 82013 which is formed or exists primarily to
    support or oppose more than one candidate or ballot measure . . . . CGC § 82027.5.
17
        **16.** The PRA imposes numerous record-keeping and reporting requirements on committees,
18
    including, but not limited to, registration statements, financial disclosure statements, the
19
    identification of committee sponsors in committee names, the identification of major donors in
20
    advertisements, and termination statements. (3d Am. Compl. ¶¶ 49-65.)
21
        **17.** Plaintiffs are required to file copies of all Reports, including campaign statements, with
22
    the Secretary of State, the Registrar-Recorder of Los Angeles County (Defendant Logan), and
23
    the Registrar of Voters of the City and County of San Francisco (Defendant Department of
24
    Elections - City and County of San Francisco). (3d Am. Compl. ¶ 56.)
25
        **18.** The reports include highly personal information, including, but not limited to, the name,
26
    address, occupation, and employer for every person that contributes one hundred dollars ($100)
27
    or more. (3d Am. Compl. ¶ 61.)
28

**Plaintiffs' Statement of Undisputed Facts**

**19.** Furthermore, committees are required to keep detailed records of all contributors of twenty-five dollars ($25) or more. (3d Am. Compl. ¶ 62.)

**20.** Reports filed in compliance with the PRA are public records, are open to the public for inspection, are placed on the internet, and are retained by filing officers indefinitely. (3d Am. Compl. ¶¶ 57, 59, & 60.)

**21.** Non-compliance with the complex provisions of the PRA may result in substantial civil and criminal penalties. (3d. Am. Compl. ¶¶ 64 & 65; State Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. p. 19, n. 14.)

**22.** On March 7, 2000, 61.4% of California citizens voted in favor of Proposition 22, entitled California Defense of Marriage Act, which added Cal. Fam. Code § 308.5, which provided that, "Only marriage between a man and woman is valid or recognized in California." (3d Am. Compl. ¶ 24.)

**23.** On February 24, 2004, the Mayor of the City and County of San Francisco directed the San Francisco county clerk to begin issuing marriage licenses to same-sex couples despite section 308.5's mandate that only marriage between a man and woman is valid or recognized in California. (3d Am. Compl. ¶ 25.)

**24.** On May 15, 2008, in response to a challenge by the City and County of San Francisco, the California Supreme Court ruled that section 308.5 violated the California Constitution. (3d Am. Compl. ¶ 26.)

**25.** In response to this ruling, ProtectMarriage.com began circulating a petition to place an amendment to the California Constitution on the June 2006 ballot to correct the constitutional infirmities of section 308.5. ProtectMarriage.com ultimately failed to collect the requisite number of signature necessary to place the amendment on the June 2006 ballot. (3d Am. Compl. ¶ 27.)

**26.** On June 2, 2008, Defendant Bowen certified Proposition 8, indicating that ProtectMarriage.com had obtained the requisite number of signatures necessary to place the proposed constitutional amendment on the November 4, 2008 ballot. (3d Am. Compl. ¶ 28.)

//

**Plaintiffs' Statement of Undisputed Facts**

**27.** Proposition 8, entitled the "California Marriage Protection Act," provided for the addition of section 7.5 to Article I of the California Constitution, and read in its entirety, " Only marriage between a man and woman is valid or recognized in California."[2]

**28.** The combined Yes on Proposition 8 campaigns received over 36,000 individual contributions toaling nearly $30 million. (State Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., p. 17, l. 1-2; Cassady Decl. ¶ 7, Ex. A.)

**29.** On November 4, 2008, the voters of California adopted Proposition 8. (Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, p. 7, l. 15.)

**30.** Supporters of Proposition 8 and a traditional definition of marriage have been subjected to a coordinated campaign of threats, harassment, and reprisals designed to silence any individual supporting Proposition 8 or a traditional definition of marriage. *See generally* John Doe Decl. #1 - #58; Decl. of Sarah E. Troupis in Supp. of Pls.' Mot. for Prelim. Inj. ("1st Troupis Decl."); Second Decl. of Sarah E. Troupis in Supp. of Pls.' Mot. for Prelim. Inj. ("2d Troupis Decl.")[3]

**31.** Reports of the threats, harassment, and reprisals directed at supporters of Proposition 8 and a traditional definition of marraige are widely reported in the media. (1st Troupis Decl. & 2d Troupis Decl.) *See also*, *Hilton, Miss California Take Sides on "Today,"* S.F. Chronicle, Apr. 23, 2009 (indicating that Miss California's support of traditional marriage may have cost her the Miss USA crown).

**32.** There is significant evidence that the public disclosure of contributors' names and other identifying information in the campaign finance reports led directly to contributors being singled out for their contribution. *See generally* John Doe Decl. #2; #4; #5; #6; #10; #17; #19; #20; #27; #28; #29; #30; #32; #53; & #54.

---

[2] Even the name of Proposition 8 proved controversial. The Defendant Bowen changed the official name of Proposition 8 to "Eliminates Right of Same-Sex Couples to Marriage. Initiative Constitutional Amendment." (3d Am. Compl. p. 9, n. 2.)

[3] Plaintiffs have summarized the declarations of John Doe #1 - #58. These summaries are attached hereto as Appendix A (recreating this Court's summary of John Doe Decl. #1 - #9) and Appendix B (summarizing John Doe Decl. #10 - #58).

**Plaintiffs' Statement of Undisputed Facts**

**33.** For example, John Doe #54 received an email shortly after this Court denied Pls' Mot. for Prelim. Inj. John Doe Decl. #54. The email specifically referenced this Court's order and the declarant's financial contribution first disclosed on the February 2, 2009 report. John Doe Decl. #54 ("The judge released the names today of the donors who supported Prop 8, and your name is on the list as having donated . . . You're a queer-hating douchebag. Fuck you. Best, Julia"). A few days later, John Doe #54 received a handwritten letter at his home address that read, in its entirety, "STUPID MOTHER FUCKER. MAKE A DONATION Like that AND YOU ARE LISTED." John Doe Decl. #54.

**34.** Likewise, John Doe #53 and his co-workers began receiving harassing phone calls at work shortly after his donation was made public in the February report. John Doe Decl. #53.

**35.** Supporters of Proposition 8 and a traditional definition of marriage have been subjected to death threats and other threats of physical violence. *See, e.g.*, Andres Araiza, *Prop 8 Threat: Fresno Police Close to Arrest*, ABC-30 (KFSN-TV) (Oct. 31, 2008) (*available at* http://abclocal.go.com/kfsn/story?section=news/local&id=6479879) (discussing a death threat directed at Fresno Mayor Alan Autry after participating in a rally in support of Proposition 8).

**36.** One individual had an unknown object thrown at her while she participated in a sign-waving party. John Doe Decl. #16.

**37.** An email indicated that one opponent of Proposition 8 was willing to kill a supporter. John Doe Decl. #29 (email stated "I tolerate you because I don't come to where you are and slaughter you").

**38.** Other supporters of Proposition 8 and a traditional definition of marriage live in constant fear of the physical harm that they or their family may suffer as a result of their support of Proposition 8 or a traditional definition of marriage. *See*, *e.g.*, John Doe Decl. #13 (feared physical violence would erupts at sign-waving events that she attended; refused to bring her children to the events; worried about future violence to her family if she supports a similar cause in the future); #18 (incidents "shook" declarant "to the core"); #19 (donor in Louisiana worried that someone "could go after" her family in California); #20 (would not host a wave party without a man present over a concern about safety of participants); #23 (concerned about the

**Plaintiffs' Statement of Undisputed Facts**

safety of his children and instructed principal that only he or his wife could pick them up from school); #30 (will not speak out publicly in the future because he "would fear for the safety of [his] children"); #39 (did not display a bumper sticker on her car because of aggression directed toward family and friends who supported Proposition 8); #45 (would have to "seriously consider . . . the safety of [her] family in the future when deciding to support a cause similar to Proposition 8"); and #52 (fears for her safety and the safety of her daughters).

**39.** Others have seen their car windows broken, homes vandalized, and their cars spray painted and scratched because they supported Proposition 8 or a traditional definition of marriage. *See*, *e.g.*, John Doe Decl. #11 (rear window of car smashed while parked in front of declarant's house); #12 (car scratched and tires deflated in grocery store parking lot; staircase leading downstairs from her home covered in urine with a puddle of urine at the bottom); #13 (car scratched, leaving 27-inch gash); #14 (home egged and floured multiple times; car egged, floured, and honeyed multiple times; motorbike tipped over); #24 (bumper sticker ripped off of car while parked in shopping area); and #26 (bumper sticker ripped off of family car while parked at school).

**40.** One declarant fears that her job may in jeopardy because of her support for Proposition 8. John Doe Decl. #16.

**41.** At least one business is aware of specific clients that they have lost as a result of the business owner's support for Proposition 8. *See* John Doe Decl. #20 (lesbian couple who patronized business of declarant for several years told declarant they would no longer support her business; couple has not patronized her business since).

**42.** Some businesses have been blacklisted because people who worked at those businesses supported Proposition 8. *See* John Doe Decl. #1 (organized protest at his business and numerous reports of organized boycotts); #4 (received an email stating that, "I AM BOYCOTTING YOUR ORGANIZATION AS A RESULT OF YOUR SUPPORT OF PROP 8"); #5 (received email suggesting that his business would suffer as a result of his one hundred dollar donation in support of Proposition 8); #27 (name posted on an internet "Boycott H8ers List"); #29 (boycott

//

**Plaintiffs' Statement of Undisputed Facts**

1  of artist threatened); & #30 (received email stating "Your company is now on a list I am

2  producing of those that will be boycotted and shut down soon").

3      **43.** Other supporters of Proposition 8 and a traditional definition of marriage have been

4  subjected to harassing emails and phone calls that could potentially harm their job status. *See*

5  John Doe Decl. #10 (emailer stated that she was going to contact the parents of the students at

6  the school where declarant works); #17 (human resources department at workplace informed of

7  declarant's donation appearing online and as part of blacklists of people who supported

8  Proposition 8); #20 (business review of declarant's business on YellowPages.com makes a

9  reference to declarant's support of Proposition 8); #52 (declarant's business received so many

10 calls at work from one person that no customers could get through and Sheriff had to intervene);

11 & #56 (voice mail left at work calling declarant a "bigot").

12     **44.** Simply exercising one's right to peaceable assembly has resulted in threats and

13 harassment. *See*, *e.g.*, John Doe Decl. #13 (participated in 6-7 sign waving events; at each event,

14 people would shout obscenities at, make obscene gestures to, and argue with supporters of

15 Proposition 8; at some events, opponents of Proposition 8 would block the signs of the

16 Proposition 8 supporters); #16 (was called a "filthy bag of shit" and "bitch" while holding sign

17 supporting Proposition 8 on a street corner; unknown object thrown at declarant while she waved

18 sign); #25 (people driving by peaceful sign demonstration by supporters of Proposition 8 made

19 obscene gestures and yelled obscenities); & #56 (people regularly made obscene gestures and

20 yelled at people participating at wave parties).

21     **45.** Some individuals saw friendships or family relationships strained or ended as a result of

22 their support for Proposition 8. *See*, *e.g.*, John Doe Decl. #15 (brother no longer speaks to

23 declarant because of her support for Proposition 8); #21 (openly gay members of declarant's

24 country club who used to greet him warmly now give him looks of disdain and do not greet him

25 as he passes); & #49 (friendship with long-time friend risked because of declarant's support for

26 Proposition 8).

27 //

28 //

**Plaintiffs' Statement of Undisputed Facts**

**46.** One supporter of Proposition 8 was told by her pastor to find another church despite the fact that she attended a church that, as an organization, supported Proposition 8. John Doe Decl. #49.

**47.** Several web sites have surfaced that combine information available in the public reports released by the Secretary of State with other publicly available information, such as addresses, enabling opponents of Proposition 8 and a traditional definition of marriage to harass the disclosed donors at home and at work. *See*, *e.g.*, http://www.californiansagainsthate.com/; http://www.eightmaps.com.

**48.** At least one supporter of Proposition 8 received no help from the police after he reported threats, harassment, and reprisals. *See* John Doe Decl. #42 (reported yard sign theft and vandalism to police on three separate occasions, but received no response from police department).

**49.** Another supporter did not report the theft of her yard signs because she felt that the police would not provide any help to her. *See* John Doe Decl. #46 (declarant spoke to police dispatcher about sign theft, but never reported any theft because she did not believe that reporting would prevent future sign theft).

**50.** Several donors have indicated that they will not contribute to Committee Plaintiffs or similar organizations in the future because of the threats and harassment directed at them as a result of the disclosure of their contributions to Committee Plaintiffs, or that they will be hesitant to contribute to Committee Plaintiffs. *See* John Doe Decl. #13 (will be hesitant about donating to or supporting a cause similar to Proposition 8 in the future because of worry about harassment, violence, and potential discrimination against her family and fear of damage to her property); #19 (will think twice before supporting a cause similar to Proposition 8); #27 (declarant will be less likely to get involved in a cause similar to Proposition 8 that does not assure her confidentiality); #45 (hopes that she would support a cause similar to Proposition 8 in the future, but will have to seriously consider her livelihood and the safety of her family before doing so); #51 (would hesitate to donate to a cause similar to Proposition 8 in the future if there is no way to keep his giving confidential).

**Plaintiffs' Statement of Undisputed Facts**

1    **51.**  Other contributors have indicated that they will contribute under the threshold amount

2    to keep from having their names disclosed. *See* John Doe Decl. #23 (if declarant donates to a

3    cause similar to Proposition 8 in the future, he will donate an amount under the disclosure

4    threshold or donate to an organization in a way that will not lead to the disclosure of his name);

5    #44 (if asked to support a cause similar to Proposition 8 in the future, will be more careful about

6    donation so that he and his family will not be identified); #53 (will support a cause similar to

7    Proposition 8 in the future, but he will look for alternative ways to contribute his money, which

8    may involve finding a way to donate anonymously or through an organization that would allow

9    him to keep his personal information and support from becoming public record).

10    **52.**  The threats and harassment directed at supporters of Proposition 8 have been enabled in

11    part by the PRA's compelled disclosure requirements.

12    **53.**  Plaintiffs were required to file their final reports on Monday, February 2, 2009. These

13    reports contained the name, occupation, and employer of at least some individuals who had not

14    been disclosed on any prior reports. *See* Decl. of David Bauer in Supp. of Pls.' Mot. for Prelim.

15    Inj. ¶10.

16    **54.**  Despite the fact that this disclosure occurred some three months *after* the November

17    2008 election, these individuals, like those disclosed in prior reports, have been subjected to

18    harassment for their support of Proposition 8. *See* John Doe Decl. #10 (received an email

19    referencing her donation on February 2, 2009); #53 (began receiving telephone calls in February

20    2009 about his donation once information on such donation was released); & #54 (received

21    harassing email on February 2, 2009 and threatening letter on February 7, 2009, after his name

22    was disclosed for the first time).

23    **55.**  Two ballot measures are in the process of being circulated for inclusion on the 2010

24    ballot, one of which would replace "marriage" in the California statutes with "domestic

25    partnership," and one of which would repeal Proposition 8. *See* http://www.sos.ca.gov/elections/

26    elections_j.htm#circ.

27    //

28    //

1  **56.** Plaintiffs believe that there is a reasonable probability that if either of these measures

2  qualifies for the 2010 ballot, people who supported Proposition 8 (and will, presumably, oppose

3  these measures) will once again be subject to threats, harassment, and reprisals.

4  **57.** The continued availability of Plaintiffs' previously filed reports creates the reasonable

5  probability that supporters of Proposition 8 will be subjected to continued harassment for

6  exercising their First Amendment rights, particularly in light of the continuing debate over the

7  subject of marriage in California.

8

9  Dated this 3rd day of June, 2009.

10                                                  Respectfully submitted,

11

12                                                     /s/ Scott F. Bieniek
    Benjamin W. Bull (Ariz. State Bar No. 009940)   James Bopp, Jr. (Ind. Bar No. 2838-84)

13   ALLIANCE DEFENSE FUND               Barry A. Bostrom (Ind. Bar No.11912-84)
    15100 North 90th Street                Sarah E. Troupis (Wis. Bar No. 1061515)

14   Scottsdale, Arizona 85260          Scott F. Bieniek (Ill. Bar No. 6295901)
    Counsel for All Plaintiffs             BOPP, COLESON & BOSTROM

15                                                  1 South Sixth Street
    Timothy D. Chandler (Cal. Bar No. 234325)   Terre Haute, IN 47807-3510

16   ALLIANCE DEFENSE FUND               Counsel for All Plaintiffs
    101 Parkshore Drive, Suite 100

17   Folsom, CA 95630
    Counsel for All Plaintiffs

18   Designated Counsel for Service

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Statement of Undisputed Facts**

# CERTIFICATE OF SERVICE

I, Scott F. Bieniek, am over the age of 18 years and not a party to the within action. My business address is 1 South Sixth Street, Terre Haute, Indiana 47807.

On June 3, 2009, I electronically filed the foregoing document described as Plaintiffs' Statement of Undisputed Facts in Support of Motion for Summary Judgment, with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Zackery P. Morazzini
zackery.morazzini @doj.ca.gov
*Attorney for Defendants Debra Bowen and Edmund G. Brown, Jr.*

Judy W. Whitehurst
jwhitehurst@counsel.lacounty.gov
*Attorney for Defendant Dean C. Logan*

Terence J. Cassidy
tcassidy@porterscott.com
*Attorney for Defendant Jan Scully*

Mollie M. Lee
mollie.lee@sfgov.org
*Attorney for Defendants Dennis J. Herrera and*
*Department of Elections - City and Count of San Francisco*

Lawrence T. Woodlock
lwoodlock@fppc.ca.gov
*Attorney for Defendant Members of the Fair Political*
*Practices Commission*

I declare under the penalty of perjury under the laws of the State of Indiana that the above is true and correct. Executed this 3rd day of June, 2009.

  /s/ Scott F. Bieniek
Scott F. Bieniek (Ill. State Bar No. 6295901)
Counsel for All Plaintiffs

**Plaintiffs' Statement of Undisputed Facts**